# Durach's Appeal.

1. Municipalities are public corporations created for political purposes, and invested with subordinate legislative powers for local purposes connected with the public good.

2. The maintenance of a police force is a proper power which may be constitutionally committed to a municipal corporation.

3. The municipal government is but a branch of the government of the state; whatever powers of taxation the legislature possess they may grant to such body.

4. There are no limitations to these powers expressed in the Constitution, but there are limits in the nature of things.

5. The legislature cannot, under the name of taxation, take private property for public use without compensation; a special tax on an individual or particular individuals would infringe this restriction.

6. But, in the exercise of the power of taxation, persons and things may be classified.

7. If the taxation is on all of a class, it may include one or many, and whether they reside in any particular locality or are scattered over the state.

8. An act of the legislature cannot be declared unconstitutional unless it violate some prohibition expressed or necessarily implied, either of the Federal or State Constitutions.

9. An act, reciting the necessity of maintaining a police, authorized the borough of Johnstown, for the purpose of maintaining such police, to assess upon each keeper, &c., of any bar, saloon, &c., a tax not more than $25 nor less than $100, to be levied as other taxes in the borough. *Held*, that such act was constitutional.

October 28th 1869.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal of R. Durach and others from the decree of the Court of Common Pleas of *Cambria county:* In Equity: No. 38, of October and November Term 1869.

On the 30th of October 1866 an Act of Assembly was passed as follows:—

"Whereas, the citizens of the borough of Johnstown are heavily burdened by the payment of large bounties to volunteers, to aid in the suppression of the present rebellion, and for the grading and paving of the streets, and other public improvements in said borough:

"And whereas, The safety of the citizens is jeopardized by the lawless and riotous proceedings, at certain drinking saloons, and

other places of resort, rendering it necessary, for the due protection of the citizens, to maintain a regular and efficient police force in said borough; therefore, in order to maintain such police force,

"Sect. 1. Be it enacted, &c., That the burgess and town council of the borough of Johnstown be and are, from and after the passage of this act, authorized to assess upon each keeper, or proprietor, of any bar, saloon, place or stand, where spirituous, vinous, malt, fermented or brewed liquors, or any other beverages, are sold, and upon the keeper, or proprietor, of every oyster saloon, restaurant, billiard table, bowling saloon, or ten-pin alley, bagatelle table, or any other place of resort, where gaming is allowed, or conducted for amusement, or otherwise, in said borough, a sum not less than $25 nor more than $100 annually.

"Sect. 2. That such assessment shall be levied and made payable to the treasurer, or tax collector, of the said borough, at the same time and manner as is provided for the levying and payment of other taxes of the borough, in the act to which this is a supplement: *Provided*, That the keeper, or proprietors, of each bar, saloon, place or stand, &c., shall be separately assessed, whether they be the property of one proprietor, or keeper, or are included in one room, building or otherwise; and that it shall be the duty of the assessors of said borough to add to the list of such proprietors, or keepers, the name, or names, of any person or persons, who may, subsequently to the regular annual assessment, open, or engage in the business of keeping bar, saloon or place, as before enumerated, to the regular list; and such assessment be deemed valid and binding, and be collected in the same manner as those on the regular list: *And provided further*, That if any doubt arise, as to whether any person comes under the provisions of this supplement, the assessor shall view, as conclusive, the oath, or affirmation, of two citizens, that they have seen refreshments or beverages sold by such person or persons," &c.

R. Durach and others (appellants) were keepers of hotels, saloons, &c., in the borough of Johnstown, and the corporate authorities of Johnstown assessed upon them for the year 1867 a special tax of $25 each under the foregoing Act of Assembly; the assessment was placed in the hands of the borough treasurer for collection; and not having been paid, a duplicate of the taxes was put into the hands of the tax collector of the borough.

Durach and the other appellants, on the 11th August 1868, filed a bill against the borough of Johnstown, setting out the assessment above mentioned, and averred, "that no such tax has been assessed upon and collected from or attempted to be assessed upon or collected from, any other of the citizens of said borough by the corporate authorities thereof," and prayed that the borough and collector might be enjoined against collecting the tax.

The defendants answered, admitting the taxation, &c., and aver-

ring that it was done under the Act of Assembly, and that the tax had not been assessed on the plaintiffs only, but on all persons within the borough keeping a bar, saloon, &c.

The case was heard below on bill and answer, and on the 10th of February 1869 the bill was dismissed with costs. The decree dismissing the bill on appeal to the Supreme Court was assigned for error. The only question considered in the Supreme Court was the constitutionality of the Act of Assembly.

*A. Kopelin* and *R. L. Johnston*, for appellants, cited Hammett *v.* Philadelphia, Amer. Law Reg. for 1869, p. 411.

*C. L. Pershing* and *J. Potts*, for appellees, cited 1 Kent's Comm. 484; Norris *v.* Clymer, 2 Barr 277; Erie and N. East Railroad *v.* Casey, 2 Casey 287; Fletcher *v.* Peck, 6 Cranch 87; Sharpless *v.* Philadelphia, 9 Harris 164; Speer *v.* Blairsville, 14 Wright 150; McKeen *v.* Northampton, 13 Id. 524; Commonwealth *v.* Clark, 7 W. & S. 133; Kirby *v.* Shaw, 7 Harris 258; Commonwealth *v.* Mann, 5 W. & S. 417; Iron City Bank *v.* Pittsburg, 1 Wright 348.

The opinion of the court was delivered, January 3d 1870, by

SHARSWOOD, J.—The question which arises upon the bill and answer in this case does not require much research or elaboration. The reasons which dispose of it are on the surface. Municipalities, such as counties, cities and boroughs, are public corporations created by the government for political purposes. They are invested with subordinate legislative powers for local purposes connected with the public good: 2 Kent's Com. 275. Wherever masses of men are crowded together in densely populated districts, it has been found that a police is necessary to maintain peace and order, and to detect and punish crime. A sense generally felt that there is such an efficient force in a community has of itself a most potent influence in restraining and preventing the violation of law. Prevention in all cases, physical, moral or political, is much better than cure. It cannot be doubted then that the maintenance of such a force is a highly proper power, which may be constitutionally committed by the legislature to these municipal corporations. Indeed, no part of the machinery of government is more important and useful than that which is thus exercised, and most advantageously exercised in this way. It comes directly home to the hearths and firesides, and affects the daily comforts and security of the citizens. According to the system universally adopted and in use, the persons residing within the district subjected to the powers of the municipality, are their own governors; they choose by a majority of voices those who administer its affairs. There can be no great danger of permanent abuses under such a

[Durach's Appeal.]

system, especially in small corporations as boroughs usually are. All are equally interested, and the constituents are near and have an immediate supervision and influence over their representatives. To carry out these objects there must be money, and hence the necessity of taxation for the purpose. The municipal government is really but a branch of the government of the state; and whatever powers of taxation the legislature possess they may lawfully grant or delegate to such bodies. There is no limitation of these powers expressed in the Constitution of Pennsylvania as there is in the constitutions of some of our sister states; but, nevertheless, there are limits in the nature of things. The legislature cannot, under the name of taxation, take private property for public use without making compensation, and a special tax levied upon an individual, or upon particular individuals, would infringe this restriction; for one mode of enforcing its payment is by the seizure and sale of the property of the delinquent, which is a direct taking. But in the legitimate exercise of the power of taxation, persons and things always have been and may constitutionally be classified. No one has ever denied this proposition. To hold otherwise, would logically require that all the subjects of taxation, as well persons as things, should be assessed, and an equal rate laid *ad valorem*. Practically no more unequal system could be contrived. It is generally agreed, if not universally conceded, that the legislature cannot impose upon the persons residing in a particular locality or portion of the territory a tax for the benefit of the whole state, nor on a borough or township for the benefit of a county, any more than upon a single individual. Had the tax now in question been laid by the corporate authorities of the borough of Johnstown upon the keepers of restaurants and drinking saloons, in any particular quarter of the village, or upon any particular individuals of the class, it would have been justly liable to this objection. If the taxation is upon all of a class, either of persons or things, it matters not whether those included in it be one or many, or whether they reside in any particular locality or are scattered all over the state. If for example a general tax were imposed upon all distilleries or owners of distilleries, it would not affect the constitutionality of the tax if the distillers all carried on their business in a particular section of the country, or were few in numbers.

The legislature has often exempted certain classes of properties and even certain classes of persons from taxation altogether. However the justice or expediency of such exemptions may be condemned, no one that I am aware of has ever questioned their constitutionality. The 29th section of the Act of April 16th 1838, Pamph. L. 525, exempted churches, colleges, academies, schoolhouses, burial grounds as well as court-houses and jails. So by the 7th section of the Act of March 1st 1780, 1 Sm. L. 479, all

lands granted to any officers or soldiers of the line of this state in the Continental army of the Revolution either by Congress or the legislature as a reward for their services, were exempted during the lifetime and ownership of such grantee. And by the 32d section of the Act of April 29th 1844, Pamph. L. 497, imposing a state tax for the payment of the interest upon the state debt, where both the objects and persons made liable to the tax are enumerated and classified, among them are "all professions, trades and occupations, except the occupation of farmers." No doubt all taxation should be general and as far as practicable equal. Legislation either to benefit or burden particular classes, under the idea that it is for the good of the state at large, infringes upon the natural and guaranteed right "of acquiring, possessing and protecting property," subject only to fair and equal contributions to the just and necessary expenses of government in the exercise of its proper and legitimate functions. A government, which assumes the office of controlling and directing the lawful industry of the citizens into the channels which it may choose to deem best, assumes what does not legitimately belong to it. Some states in modern times, in undertaking to find work for the people, have discovered that it was a sure way to make work for themselves. But we cannot sit in judgment upon the wisdom or expediency of laws. An act of the legislature must clearly transcend the limits of the power confided to that department of government, or more properly speaking, it must violate some prohibition, either express or necessarily implied, either of the Federal or state constitutions, before it can be pronounced by the judicial department to be unconstitutional and void. We cannot so pronounce as to the Act of October 30th 1865, Pamph. L. 1866, p. 1224, and the court below was therefore right in dismissing the bill.

　　　　Decree affirmed, and appeal dismissed at the costs of the appellants.