# Hagemann's Appeal.

The assignee of a judgment recovered on a municipal lien acquires all the substantial rights of the lien as fully as the same were held by the assignor, and such assignment carries with it the priority which the lien possessed in the hands of the municipality.

November 6th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON and TRUNKEY, JJ. PAXSON and WOODWARD, JJ., absent.

[Hagemann's Appeal.]

Appeal from the Orphans' Court of *Allegheny county:* Of October and November Term 1878, No. 274.

This was the appeal of William Hagemann from the decree of the court making distribution of the estate of Conrad Schad, deceased.

By the Act of January 6th 1864, Pamph. L. 1131, the city of Pittsburgh was authorized to make certain street improvements, and to assess the cost thereof on the properties benefited thereby. If the assessments were not paid, they were to be filed by the city solicitor as liens, in the same manner as mechanics' liens, and suits of scire facias and levari facias were to issue thereon. These liens were to have the same priority as other municipal liens. During the lifetime of Schad, under the provisions of this act, liens were filed against his property and judgment having been obtained, execution issued thereon. At the request of Schad, Hagemann paid the amount of the claims with costs, to the city solicitor, and took from the latter an assignment of the same on the record. After the death of Schad, the property against which the liens were filed was sold under an order of the Orphans' Court. The amount realized from the sale was sufficient to pay Hagemann's claims, but was not enough to satisfy all the liens against the property. Hagemann claimed that his liens were entitled to priority, and his claim was allowed. To this allowance, certain lien-creditors excepted, alleging: 1. That the Act of 1864 gave no priority to these liens. 2. That said act conferred no power upon the city to assign the same. 3. That the payment by Hagemann was the act of a volunteer and he had no right to either assignment or subrogation as against a prior lien.

The court, Hawkins, P. J., sustained these exceptions, allowing Hagemann only his *pro rata* share of the fund, in an opinion, saying:

"It may be conceded that the city solicitor, as an attorney at law, had no power of assignment either at common law or under the Act of 1864. But it does not follow that his act was void. If this were the case of an ordinary lien, his assignment might be made operative by his principal's receipt of the amount paid to him (Rowland *v.* Slate, 8 P. F. Smith 196); and consequently there would be no right of collateral objection. It would be governed by the law of agency applicable to private rights.

"But there is a wide difference between these assessments and ordinary liens. They are public burthens, created for the purpose of providing means of paying the costs and expenses of a certain class of municipal improvements, and are given priority over all other liens, without regard to time of entry, because of their nature and purpose. They do not depend on contract. The power to make and collect them is vested in the city, as being an appropriate function of government, and the duty to pay is imposed as being appropriate to the citizen. They have no inherent qualities of assignability or

collectibility.    The power of the city, and the duty of the citizen with respect to them, depend exclusively on the Act of 1864.    That act does not expressly confer authority to delegate this power; it impliedly denies such authority by providing that, when the lien of assessments shall have been satisfied, it shall be so marked on the index of the Municipal Lien Docket.

"It follows from the nature and purpose of these assignments:

"1. That the power to make and collect them as preferred claims, being an attribute of sovereignty, could not be delegated. It could be exercised by the city alone.    Finney v. Commissioners, 1 S. & R. 62; McInerny v. Reed, 23 Iowa 410; Russell's Appeal, 9 P. F. Smith 401; Philadelphia Association v. Wood, 3 Wright 73; Mellon v. Hartzhorn, District Court Allegheny Co., 1 Auditors' Rep. Docket 322.

"2. That the priority of lien of these assessments, having been given for a special and limited purpose, was satisfied by the accomplishment of that purpose.    That purpose was the payment of the amount of the assessment into the city treasury.

"3. That therefore the priority of lien of these assessments had no quality of assignability and the city no power to assign.    Griffing v. Pintard, 25 Miss. 173; Jackson v. Clark, 18 Johns. 441; McInerny v. Reed, supra; Schenk v. Peay, 1 Dillon 267.

"The hazard to the citizen and to the public of investing the city with the power of assignment in such cases, is obvious.

"If a single assignment, with its incidents, can be thus transferred to a private individual by the city, the whole list of assessments may be transferred.    The functions of government would thus be placed in irresponsible hands, and a wide door opened to fraud and oppression.    History teaches that a 'farmer of taxes is of all creditors the most rapacious.'    Neither the opportunity nor disposition would be wanting to pervert to the purposes of private gain or personal malice, those extraordinary powers which ought only to be exercised by a paternal government: McInerny v. Reed, supra.    It would be an easy matter, for example, to divest the lien and destroy the value of the first mortgage without the knowledge or fault of the mortgagee.    The lien of the assessment is given priority by law over all other liens, without regard to time of entry; and consequently a sale thereon would divest the lien of a prior mortgage: Pittsburgh's Appeal, 20 P. F. Smith 142.    Inquiry at the place designated by law for receipt of the amount of the assessment, would have disclosed payment, but no record of the assignment of the lien.    It is no part of the duty of the city to make such record.    Its interests terminate with the payment of the assessment.    The mortgagee could not be expected to inquire further; and yet, notwithstanding his diligence, he will have lost his lien, if the assignment be valid, and the assignee have perhaps become the owner of his security at a merely nominal price,

[Hagemann's Appeal.]

So, the substitution of the assignee to the rights of priority of lien of the city would, in many cases, result injuriously to the public, by the postponement and loss of subsequently accruing assessments. Suppose, for example, that after such subsequent lien should have been entered, the assignee of the first lien for assessment should issue execution and sell the property assessed, without the knowledge of the city authorities, as might readily happen. Such sale, if valid, would divest all liens, and the assignee would be entitled to the proceeds to the extent of his lien in preference to all lien-creditors, including the city, by virtue of his priority of lien. If the proceeds should be no more than sufficient to pay his claim, the city would thus, by its own act, have deprived itself of part of its necessary revenue, and the rights of the subject would have become paramount to those of the sovereign. And thus by farming out the whole list of assessments, which would be as much within its corporate powers as the transfer of an assessment against a single property-holder, the loss would be proportionately increased.

"The case of Mellon *v.* Hartzhorn, *supra*, is at once a practical illustration of the dangerous tendency, and of the denial of the right of such assignment. A lien was entered by the city of Allegheny, for grading and paving Robinson street, under a statute similar to the Act of 1864. On payment of the amount of the assessment to the city solicitor, he assigned the lien to the payor. Subsequently, another lien was entered by the city against the same property, for grading, &c., Grantham street. The property assessed having been sold for an amount not sufficient to pay both assessments, the court (Hampton and Williams, JJ.), appropriated the whole fund to the city, thus treating the Robinson street lien as having been extinguished, so far as the city was concerned, notwithstanding the assignment. And this is the true doctrine. The right of priority of lien is part of the machinery of government for the collection of its dues: Griffing *v.* Pintard, *supra*. It overrides private rights of property, and was never intended to be controlled by the feeble hand of the citizen. After assignment it loses its character of public burthen for public purposes, and thus the only basis upon which its quality of priority could rest is taken away. If it has any vitality at all, it is simply as an ordinary lien. There may be cases in which the priority of lien will be maintained for certain purposes after assignment. Thus, where one of several lien-creditors pays, and takes an assignment of a municipal lien for his own protection, it may be that equity will continue such lien as between him and his co-lien-creditors. Justice would seem to require it. But in the case now before the court the assignee has no such equity. He declares that his only object in paying the assessment was to befriend Schad.

"These reasons lead to the conclusion that payment to the city

of the amounts of the assessments, against the property of Conrad Schad, discharged their priority of lien."

From the distribution made in conformity with this opinion, Hagemann took this appeal.

*Morton Hunter* and *R. B. Carnahan*, for appellant.—Municipal liens are of the same nature as mechanics' liens in their essential features, and mechanics' liens are assignable. The cases cited by the court below refer to taxes, but a municipal lien is not a tax: Northern Liberties v. St. John's Church, 1 Harris 104; Pray v. Northern Liberties, 7 Casey 69. By subrogation Hagemann acquired all the rights of the city: Cottrell's Appeal, 11 Harris 294; 2 Wharton's Dig. 612.

*J. H. Baldwin* and *Thomas Mellon*, for appellees.—The appellant claims the right to purchase government taxes, and by assignment, clothe himself with the sovereign power to enforce them, regardless of any prior claims of private citizens.

Though municipal liens are not taxes, yet the power to impose a local assessment and make it a lien is a branch of the taxing power: Dillon on Municipal Corporations, § 605; Cooley on Taxation 148, 418; Commonwealth v. Woods, 8 Wright 113; Hammett v. Philadelphia, 15 P. F. Smith 150; McInerny v. Reed, 23 Iowa 410; Thompson v. Schermerhorn, 2 Selden 92.

We adopt the opinion of the learned court below as our argument in this case.

Mr. Justice MERCUR delivered the opinion of the court, January 6th 1879.

This contention arises in the distribution of the estate of Conrad Schad. It is whether the assignee of a judgment recovered on a municipal lien, acquires all the substantial rights of lien as fully as the same were held by the assignor.

The city of Pittsburgh held two judgments against Schad. They were based on municipal claims filed under the Act of 6th January 1864, Pamph. L. 1131; scire facias had issued thereon, judgments had been obtained, executions had issued, and the property of Schad was advertised to be sold. On the day preceding the sale Schad went to the appellant and besought him to advance the money, and prevent a sacrifice of his property. In pursuance of this urgent request, and as a favor to Schad, the appellant paid the money to the attorney of the plaintiff, in the judgments, who was also city solicitor, and took from him an assignment thereof. The Act of Assembly referred to expressly directs these claims to be placed in the hands of the city solicitor, for him to collect and pay damages. In this case it is conceded that the city solicitor paid over the money in pursuance of law. The city makes no complaint. The conten-

tion is between the assignee and other creditors of Schad. The court below held the assignments were not void, and if it were the case of ordinary liens, his assignments might be ratified by the receipt of the money by his principal; but that these liens were not of such a character. It conceded the assignment to be effectual so far as to pass to the assignee a right to the money due on the judgments, and therefore allowed to them a *pro rata* share in the fund, yet held the judgments lost that priority of lien which they had when in the hands of the city.

This presents the question for consideration.

The act provides, inter alia, for the widening, extending, grading and paving of streets in the city of Pittsburgh, and for assessing the costs and expenses thereof on the property benefited thereby. It also declared the assessments thus made should be liens on the properties charged therewith from the commencement of the improvement for which they were made. The court thought the power to make and collect these assessments was an attribute of sovereignty, and could not be delegated or exercised by any other than the city; and as it had received the money, it mattered not in what manner the priority of lien was extinguished. It thought to hold the full claim of the city in these judgments could be assigned would be hazardous to the person against whose property the claim was assessed, and to the public. It will, however, be observed that this was not an ordinary tax imposed for a public purpose. It was a municipal charge for the benefit of lot-holders on the particular street. The assessment was intended as an equivalent from the owner for the improvement made to the value of his property. They were not to be collected like public taxes. The act directed the liens to be filed in the District Court of the county, in the same manner as mechanic's liens are filed, and that writs of scire facias and levari facias be issued thereon, in like manner. Hence the mode of assessment to pay some persons damaged by the improvement, as well as the manner of their collection, distinguish these assessments from public taxes generally: The Northern Liberties *v.* St. John's Church, 1 Harris 104. Conceding, however, in a broad sense, that in their inception, these assessments may be considered as taxes, how stands the case? When the assignment was made the claim had changed its form. It had not only become a judgment *in rem* ripe for execution; but the latter had actually issued. The collection of the judgment was to be enforced like other judgments *in rem*. No unusual powers of sale attached to the judgment. Its only preference over a mechanic's lien was its priority.

The facts show this is not the case of one buying a tax against a tax-payer, without the knowledge or consent of the latter, and with a view to enforce unusual remedies against him; but it was the purchase of judgments with restricted remedies, at the earnest solicitation of the defendant therein.

[Hagemann's Appeal.]

Granting then that it would be against the policy of the law to permit a municipality to become "a farmer of taxes" and to sell and transfer against the wishes of the tax-payer, a tax, with harsh or unusual powers for its collection, yet that is not this case. The law gave to the city one mode only for the collection of these assessments. It created no personal liability. The lien of the judgments and right of sale were limited to the specific properties described. To prevent the city from selling the property at a sacrifice, at the urgent request of the defendant in the judgments, and to give him further time for their payment, the appellant advanced the money. Both parties to the judgments were satisfied. What right has a third person to complain? The interposition of the appellant worked no injury to other creditors. Without any action on his part, the judgments were preferred liens. The defendant therein, to further his own interests, and to the prejudice of no one, caused the equitable right of enforcing the liens resting on his property to be transferred to the appellant. Under all the circumstances we cannot see that any principle of public policy was thereby assailed. If not, then all the incidents of the preferred liens passed with the assignments to the appellant.

> Decree reversed, with instructions that distribution be made conformably with this opinion ; and it is ordered that the appellees pay the costs of this appeal.