**Catherine B. MAIERHOFFER, individually and on behalf of herself and all others similarly situated, Appellant,**

v.

**GLS CAPITAL, INC. and the County of Allegheny.**

Commonwealth Court of Pennsylvania.

Argued Feb. 10, 1999.

Decided May 14, 1999.

Bernard S. Rubb, Sewickley, for appellant.

George M. Janocsko, Pittsburgh, for appellees.

Before COLINS, President Judge, and McGINLEY, J., PELLEGRINI, J., FRIEDMAN, J., KELLEY, J., FLAHERTY, J.,and LEADBETTER, J.

LEADBETTER, Judge.

Appellant Catherine B. Maierhoffer appeals an order of the Court of Common Pleas of Allegheny County (trial court), which dismissed her complaint with prejudice. At issue is whether a county may assign its tax liens.

■ Appellant failed to pay property taxes on certain real property she owns in Allegheny County (County) for the years 1982, 1985–89 and 1991–95.[1] As a result, pursuant to the Municipal Claims and Tax Liens Act (Act),[2] the County secured a lien against the property. On June 23, 1997, the County initiated a scire facias proceeding[3] to collect the taxes due. In September 1997, the County assigned approximately 23,800 tax liens, including the lien on appellant's property, to GLS Capital, Inc. (GLS).[4] The aggregate value of the liens was approximately $38 million and the sale price was $34.3 million. On April 13, 1998, GLS filed a Praecipe to Reissue Writ of Scire Facias against appellant, which was granted. Thereafter, GLS moved for and was granted judgment against appellant in the amount of $10,-385.55.[5] On October 7, 1998, GLS requested a writ of execution and scheduled a sheriff's sale of appellant's property for December 7, 1998.

On December 2, 1998, appellant filed a class action complaint on behalf of herself and all other similarly situated owners of real property in the County seeking a declaratory judgment that the County lacks authority to assign tax liens.[6] GLS agreed

1. The aggregate face amount of the delinquent taxes is $3,833.45.

2. Act of May 16, 1923, P.L. 207, *as amended,* 53 P.S. §§ 7101–7505.

3. A scire facias proceeding is the procedure by which a municipality prosecutes a lien to judgment. *Shapiro v. Center Township, Butler County,* 159 Pa.Cmwlth. 82, 632 A.2d 994, 996 (1993).

4. These liens were based on tax years prior to and including 1995. The County subsequently assigned to GLS tax liens for tax years 1996 and 1997.

5. The order granting judgment itemized the judgment amount as follows:

| | |
|---|---|
| Tax at face | $ 3,833.45 |
| Penalty | 176.66 |
| Interest | 4,044.44 |
| Lien Costs | 615.00 |
| Fees and Expenses | 1,716.00 |
| | $10,385.55 |

6. The complaint also sought a preliminary and permanent stay of execution of GLS's efforts to bring the property of the class members to sheriff's sale.

to continue the December 7, 1998, sheriff's sale until January 1999, and filed preliminary objections to the complaint and a motion for summary judgment. After argument on the issue of whether the County's tax liens are assignable, on December 17, 1998, the trial court dismissed appellant's complaint, concluding, *inter alia,* that Section 33 of the Act[7] authorizes the assignment of tax liens by a county.[8] This appeal followed.

On appeal, appellant's principal argument is that the trial court erred in concluding that municipal tax liens are assignable under the Act. Appellant also argues that: (1) the remedies provided in the Act do not preclude the trial court from granting a declaratory judgment; (2) the trial court's findings of fact are unsupported by evidence in the record; and (3) appellant has standing to represent the class in this action. Because we conclude as a matter of law that tax liens are assignable under the Act, we need not address the other issues.

■ The Act authorizes and sets forth the procedures by which a municipality may file tax claims[9] and municipal claims,[10] which upon filing become liens against the subject property. Section 33 of the Act provides:

> *Any* claim filed or to be filed, under the provision of this act, and *any* judgment recovered thereon, *may be assigned or transferred to a third party,* either absolutely or as collateral security, and such assignee shall have all the rights of the original holder thereof.
>
> Where the claim has been paid in full by one of several defendants therein, whether originally named as such or allowed to intervene and defend, it shall be satisfied of record as to him, and marked to his use as against the other defendants, pro rata, according to their respective interests in the property bound by the claim.

53 P.S. § 7147 (emphases added).

Appellant asserts, in essence, that Section 33 does not mean what it says. She argues that "any claim" necessarily refers only to municipal claims, and not to tax claims, because tax claims cannot be assigned to a "third party." She argues that a tax claim assignment involves only two parties, the municipality and the assignee, while a municipal claim assignment often involves three parties—the municipality (the first party), the use plaintiff[11] (the

---

7. 53 P.S. § 7147.

8. The trial court also concluded that: (1) because the Act provides an adequate statutory remedy to appellant, which appellant failed to pursue, the court was without power to award the requested relief; and (2) appellant had no standing to represent class members not bound by a settlement agreement entered in a somewhat related case.

9. Section 1 of the Act defines "tax claim" as "the claim filed to recover taxes." 53 P.S. § 7101.

10. "Municipal claim" is defined in the Act as:

    (1) the claim arising out of, or resulting from, a tax assessed, service supplied, work done, or improvement authorized and undertaken, by a municipality, although the amount thereof be not at the time definitely ascertained by the authority authorized to determine the same, and a lien therefor be not filed, but becomes filable within the period and in the manner herein provided, (2) the claim filed to recover for the grading, guttering, macadamizing, or otherwise improving, the cartways of any public highway; for grading, curbing, recurbing, paving, repaving, constructing, or repairing the footways thereof; for laying water pipes, gas pipes, culverts, sewers, branch sewers, or sewer connections therein; for assessments for benefits in the opening, widening or vacation thereof ... and (3) the claim filed to recover for work, material, and services rendered or furnished in the construction, improvement, maintenance, and operation of a project or projects of a body politic or corporate created as a Municipal Authority pursuant to law.

    53 P.S. § 7101.

11. "Use plaintiff" refers to a contractor that performs a municipal improvement. See 53 P.S. § 7107 ("When the contractor perform-

second party) and the assignee of the use plaintiff (the third party). From this, she asserts that because there is no "third party" involved in the initial tax claim, there is no one to whom the tax claim may be assigned.

We cannot accept appellant's strained reading of the Act. Statutes are presumed to employ words in their popular and plain everyday sense. *Treaster v. Union Township*, 430 Pa. 223, 229, 242 A.2d 252, 255 (1968). "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903. We need look no further than this rule of construction to construe Section 33 of the Act.[12] In common usage, "any" means "one or more indiscriminately from all."[13] It is inclusive. As our Supreme Court stated in construing the phrase "benefits ... are exempt from any State or municipal tax" in *Belefski Estate*, 413 Pa. 365, 196 A.2d 850 (1964):

> [I]t is highly significant that the legislature, in its description of the taxes to be exempted, stated that the exemption was to be extended to *any* state tax. The word "any" is generally used in the sense of "all" or "every" and its meaning is most comprehensive.... [T]he legislative employment of the word "any" adds further emphasis to the conclusion that it was the legislative intent to exempt the proceeds of the Fund from *all* taxes, whether such taxes be on the property, the transfer of such property or on the privilege of succession after death to such property.

413 Pa. at 375–76, 196 A.2d at 855. Similarly, since the subject of the Act encompasses both tax claims and municipal claims, "any claim filed ... under the provisions of this Act" includes both.

Moreover, in everyday usage and understanding, the term "third party" means a party that is a stranger to the transaction or agreement at hand.[14] Indeed, in the no less than 250 times that the phrase "third party" appears in our Pennsylvania statutes, its meaning is generally consistent with the above definitions. For example, the Pennsylvania Commercial Code provides that "party," "[a]s distinct from 'third party,' means a person who has engaged in a transaction or made an agreement within this title." 13 Pa.C.S. § 1201. The Comment to Section 2326 of the Commercial Code states that "the general policies of the Act ... require good faith not only between the parties to the sales contract, but as against interested third parties." 13 Pa.C.S. § 2326, Comment 3. Similarly, "third party" is used in numerous other statutes to indicate a party that is not a principal to the subject transaction or agreement; 53 P.S. § 27401 ("If a property has not been redeemed and has not been purchased by a third party at the treasurer's sale for the upset price or more, the city, at its option, may take title"); 15 Pa.C.S. § 2322(c) ("Any person desiring to transfer shares in a transaction ... shall obtain an offer from a third party

ing the work is to be paid by assessment bills, the lien shall exist for, and the claim shall be filed to, his use, and he shall under no circumstances have recourse to the municipality authorizing the work.").

**12.** Appellant argues that case law supports her contention that tax liens are not assignable. The cases cited by appellant, however, either pre-date Section 33 of the Act, *e.g., Mercantile Trust & Deposit Co. of Baltimore v. Mellon*, 8 Pa.Super. 645 (1898), *aff'd*, 196 Pa. 176, 46 A. 308 (1900), are not binding on this court, *e.g., McHugh v. Vukin*, 31 Luz.L.Reg.R. 464 (Pa.Com.Pl.1937), or are simply inapposite, *e.g., In re South Philadelphia State Bank's*

*Insolvency*, 295 Pa. 433, 145 A. 520 (1929) (surety company which paid amount of a state deposit pursuant to a bond not entitled to enjoy state's sovereign preference as creditor after bank's insolvency).

**13.** Webster's Third New International Dictionary 97 (1993).

**14.** Webster defines "third party" as "a person other than the principals." Webster's Third New International Dictionary 2378 (1993). Black's Law Dictionary defines "third party" as "one not a party to an agreement, a transaction, or an action." Black's Law Dictionary 1479 (6th ed.1990).

who meets the requirements"); 62 P.S. § 432.19 ("All conditions of eligibility for assistance shall be verified prior to authorization of assistance or during a redetermination of a recipient's eligibility, unless the verification is pending from a third party and the applicant has cooperated in the verification attempt"); and 53 P.S. § 12720.405(a) ("... Such pledge, lien and charge shall be fully perfected as against the city, all creditors thereof and all third parties").

Each of these statutes implicitly defines "third party" in accordance with its plain and ordinarily accepted meaning, and we see no reason in law or logic to construe Section 33 in a different manner. *See Meier v. Maleski,* 670 A.2d 755, 759 (Pa. Cmwlth.1996), *aff'd,* 549 Pa. 171, 700 .A.2d 1262 (1997) ("When the language of a statute is clear and free from all ambiguity, any further deliberation as to its meaning is unwarranted.").

■ Examination of the entire Act bolsters this conclusion. Certain sections of the Act relate exclusively to tax claims or to municipal claims, but not to both.[15] Thus, the Legislature clearly knew how to limit provisions to one type of claim or another. It did not do so in Section 33. Thus, the words, "any claim filed ... under the provisions of this Act," when taken in the context of the Act and when construed according to common usage, are properly interpreted as "*any* tax *or* municipal claim filed under the provisions of the Act," and under Section 33, a municipality may assign any claim, tax or municipal, to a party that is a stranger to the original transaction, here GLS.[16]

---

15. See, for example, 53 P.S. §§ 7102 (tax claims), 7103 (tax claims), 7104 (tax claims), 7109 (tax claims), 7106 (municipal claims) and 7141 (municipal claims).

16. Appellant also argues in passing that, under the terms of Section 33, the liens were extinguished when GLS purchased them. Appellant, however, again ignores the plain meaning of the words of the statute. Section

Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this 14th day of May, 1999, the order of the Court of Common Pleas of Allegheny County in the above captioned matter is hereby affirmed.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. Unlike the majority, I do not believe that section 33 of the Municipal Claims and Tax Liens Act (Act)[1] authorizes a county to assign tax liens. Thus, I would reverse the order of the Court of Common Pleas of Allegheny County (trial court) dismissing Catherine B. Maierhoffer's complaint.

Section 33 of the Act, 53 P.S. § 7147 .(emphasis added), provides in pertinent part as follows:

Any claim filed or to be filed, under the provisions of this act, and any judgment recovered thereon, may be assigned or transferred to a *third party,* either absolutely or as collateral security, and such assignee shall have all the rights of the original holder thereof.

The majority interprets section 33 of the Act to mean that a municipality may assign any claim, tax or municipal, to a party that is a stranger to the original transaction. (Majority op. at 551.) For the following reasons, I cannot accept this interpretation.

The phrase "third party" in section 33 of the Act presupposes the existence of an agreement, transaction or action involving two other parties. *See* Black's Law Dictionary 1479 (6 th ed.1990). Here, we are concerned with tax claims or municipal

---

33 provides that "[w]here the claim has been paid in full *by one of several defendants* therein, ... it shall be satisfied of record as to him...." Clearly, this language does not encompass the assignment of liens to a third party.

1. Act of May 16, 1923, P.L. 207, *as amended,* 53 P.S. § 7147.

claims. Tax claims are *in rem* actions and never involve two other parties. Therefore, section 33 of the Act cannot apply to tax claims.[2] Moreover, municipal claims, which are also *in rem* actions, only involve two other parties where the claims exist for the use of a contractor, the so-called "use-plaintiff" claims.[3] Thus, section 33 can apply only to "use-plaintiff" municipal claims.

Moreover, the object of all statutory construction is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a). Toward this goal, we must presume that the General Assembly intends the entire statute to be effective and certain and that none of the provisions of the statute are mere surplusage. 1 Pa.C.S. § 1922(2); *Masland v. Bachman*, 473 Pa. 280, 374 A.2d 517 (1977). Thus, a particular section of a statute must be construed "with reference to the entire statute and not apart from its context." *Commonwealth Insurance Department v. Adrid*, 24 Pa.Cmwlth. 270, 355 A.2d 597, 599 (1976). Taking section 33 in the context of the entire statute, I cannot conclude that the legislature intended counties to assign tax claims.

**2.** In reaching a contrary result, the majority interprets the words "third party" broadly to refer to anyone who is a stranger to the transaction. (Majority op. at 550.) However, the Pennsylvania Supreme Court has noted that the Act is in derogation of the common law and, thus, must be strictly construed. *City of Philadelphia to Use of Montgomery Paving Co. v. Egolf*, 314 Pa. 216, 171 A. 604 (1934); *see also* 1 Pa.C.S. § 1928.
 Moreover, in interpreting the words "third party" in section 33 of the Act, the majority relies on the common and approved usage of the terms. However, the assignment of rights to third parties is a technical area of the law. Thus, I believe that this court must rely on the technical meaning of the words "third party" in the context of the entire Act. *See* 1 Pa.C.S. § 1903(a).

**3.** The only instance set forth in the Act involving two other parties in a claim is a claim that exists for the use of a contractor who is to be paid by assessment bills. *See* 53 P.S. § 7107. Thus, section 33 of the Act allows the assignment of such a claim.

Here, section 33 of the Act is not the only provision of the statute that addresses the assignment of claims.[4] Section 4 of the Act, 53 P.S. § 7107, authorizes certain municipal authorities to assign their municipal claims and liens to the city, borough or township in which the property subject to the claim or lien is located.[5] Unlike section 33, section 4 does not require the assignment of the claim to a "third party." Thus, to give effect to both sections of the Act, it is necessary to view section 33 as governing "use-plaintiff" claims, which involve two other parties, and to view section 4 as governing *in rem* claims that do not involve two other parties. The majority's view that section 33 governs *all* claims ignores this required distinction and, thus, renders section 4 of the Act without effect and superfluous. Because such construction is contrary to the presumption that the General Assembly intends *every* provision of the Act to have effect, I do not believe that the majority's interpretation of section 33 of the Act can be correct.

Accordingly, I dissent.[6]

Judge PELLEGRINI joins in this dissenting opinion.

**4.** Parts of statutes are in pari materia when they relate to the same things, and when sections of a statute are in pari materia, they must be construed together. 1 Pa.C.S. § 1932.

**5.** The legislature authorized such assignments through a 1949 amendment to section 4 of the Act. Whenever a section of a statute is amended, the amendment shall be construed as merging into the original statute, and "the remainder of the original statute and the amendment shall be read together and viewed as one statute passed at one time." 1 Pa.C.S. § 1953.

**6.** In addition, there may be public policy concerns that should be considered in determining whether section 33 of the Act authorizes the assignment of tax claims. For example, if a municipality could assign its tax claims, the municipality would be giving up potential income and, thus, would be increasing the tax burden on other taxpayers. However, Maierhoffer has not raised any specific public policy arguments in her brief.

KELLEY, Judge, dissenting.

I respectfully dissent.

As Mr. Chief Justice Marshall so aptly stated in his oft-quoted phrase, "the power to tax involves the power to destroy..." *McCulloch v. Maryland,* 4 Wheat. 316, 17 U.S. 316, 431, 4 L.Ed. 579 (1819). In reviewing the claims raised in the instant appeal, I believe it is necessary to keep this principle in mind.

That taxes must be collected by the Commonwealth and its various lesser constituents cannot be disputed. They are "burdens or charges imposed by the legislative power [1] upon persons or property to raise money for public purposes, and to defray the necessary expenses of government." *Woodward v. City of Philadelphia,* 333 Pa. 80, 86, 3 A.2d 167, 170 (1938). *See also Young Men's Christian Association of Germantown v. Philadelphia,* 323 Pa. 401, 413, 187 A. 204, 210 (1936) ("Taxes are not penalties but are contributions which all inhabitants are expected to make (and may be compelled to make) for the support of the manifold activities of government. Every inhabitant and every parcel of property receives governmental protection. Such protection costs money. When any inhabitant fails to contribute his share of the costs of this protection, some other inhabitant must contribute more than his fair share.")

In addition, that this necessary and awesome power has been conferred upon the legislative branch of our government is likewise beyond dispute. Indeed, as the Pennsylvania Supreme Court stated long ago:

> That the power to tax is peculiarly a power of the legislature has never been questioned in this country and has frequently been asserted by our courts. The taxing power, one of the highest prerogatives, if not the highest, of the

legislature, must be exercised through representatives chosen by the people. It is clearly within the interdiction of this principle of constitutional government against delegation. True, in this state, and in many others, the power to tax has been delegated to and exercised by smaller units of state government, such as municipal bodies chosen by the people. For, while the principle of non-delegation of taxing power is the general rule, delegation to municipal authorities has been recognized as lawful. This is an exception to the general rule, but such delegation is kept within defined lines, with supervisory control always vested in elective bodies. There are reasons for this exception, at least in this state. Justice SHARSWOOD in *Durach's Appeal,* [62 Pa. 491, 493–494 (1870)], said: "Municipalities, such as counties, cities and boroughs, are public corporations created by the government for political purposes. They are invested with subordinate legislative powers for local purposes connected with the public good... To carry out these objects [of local government] there must be money, and hence the necessity of taxation for that purpose." These local units of government possess a legislative body chosen by the people, and delegation of power to them does not actually remove this important subject from the control of the people. Justice SHARSWOOD stated that the great principle which lies at the base of our tax institution is popular representation. It was the reliance on this principle that induced the framers of our Constitution to plant in the legislature the taxing power without stint or reservation. As popular representation is one of the attributes of our lesser units of government, it would seem that the theory he speaks of is maintained by delegation to them.

---

1. The legislative power in Pennsylvania is conferred upon our General Assembly and its subordinate constituents by Article 2, Section 1 of the Pennsylvania Constitution which states that "[t]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." Pa. Const. art. II, § 1.

There is another historical reason which supports the right of the legislature to entrust local taxation to municipal governments. Local government units, in many instances, antedated federal or state governments and before their inception levied taxes. In this state this is particularly true. Our earliest taxes were levied by the townships under the laws of the Duke of York for poor relief and governmental expenses. Under the proprietary government the county was the taxing unit. When the legislature authorized cities, townships, boroughs and counties to levy taxes, it merely carried on a system that had been historically in existence.

*Wilson v. Philadelphia School District,* 328 Pa. 225, 229–230, 195 A. 90, 94 (1937) (citations omitted).

However, the exercise of this awesome legislative power is circumscribed. It may only be exercised by a legislative body and, generally speaking, may not be constitutionally delegated by that body. *See, e.g., William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 217, 346 A.2d 269, 294 (1975) ("[W]e agree that the power to tax is a legislative power, and that its delegation to the judiciary would be unconstitutional.") (citations omitted); *Danson v. Casey,* 33 Pa.Cmwlth. 614, 382 A.2d 1238, 1241 (1978), *aff'd,* 484 Pa. 415, 399 A.2d 360 (1979) ("The power of taxation, in all forms and of whatever nature, is the sole prerogative of the General Assembly, and although delegation of this power to municipalities and school districts without any definite restrictions has been upheld, such a delegation is impermissible when made to a nonelective body.") (citations omitted).

Likewise, the Commonwealth, as sovereign, may act to sell one's property to recover the taxes assessed thereon. Indeed, as the Pennsylvania Superior Court has noted:

> Every owner of real estate holds it subject to the paramount sovereign power of the Commonwealth to subject it to the burden of taxes and, if need be, to enforce the collection thereof by sale of the land. The land itself is made liable for taxes by assessment and lien, separate and apart from personal liability which may be imposed by statute on the owner for their payment, and an owner is powerless to divest his land of its tax burden except by payment of the taxes.

*Day v. Ostergard,* 146 Pa.Super. 27, 21 A.2d 586, 588 (1941). I believe that this sovereign authority to compel the sale of real estate to satisfy a tax debt, like the sovereign authority to impose the tax, cannot be delegated, or assigned, by a legislative body.

The crux of the instant appeal is the interpretation of the language of the Municipal Claims and Tax Liens Act (Act) [2]. In particular, this case involves the interpretation of section 33 of the Act which provides, in pertinent part, that *"[a]ny claim* filed or to be filed, under the provisions of this act, and any judgment recovered thereon, may be assigned or transferred to a third party, either absolutely or as collateral security, **and such assignee shall have all the rights of the original holder thereof."** 53 P.S. § 7147 (emphasis added).

The majority concludes that by using the term "any claim", section 33 allows a municipality to assign both its tax and municipal claims, and the assignee thereby steps into the shoes of the municipality and may enforce the claim as that entity could. I strongly disagree with this notion.

In examining this provision, the majority notes that the Act makes a distinction between a "tax claim" and a "municipal claim". Section 1 of the Act defines a "tax claim" as "the claim filed to recover taxes." 53 P.S. § 7101. Section 1 defines a "municipal claim" as:

---

2. Act of May 16, 1923, P.L. 207, *as amended,* 53 P.S. §§ 7101–7505.

both (1) the claim arising out of, or resulting from, a tax assessed, service supplied, work done, or improvement authorized and undertaken, by a municipality, although the amount thereof be not at the time definitely ascertained by the authority authorized to determine the same, and a lien therefor be not filed, but becomes filable within the period and in the manner herein provided, (2) the claim filed to recover for the grading, guttering, macadamizing, or otherwise improving, the cartways of any public highway; for grading curbing, recurbing, paving, repaving constructing, or repairing the footways thereof; for laying water pipes, gas pipes, culverts sewers, branch sewers, or sewer connections therein; for assessments for benefits in the opening, widening or vacation thereof; or in the changing of water-courses or the construction of sewers through private lands; or in highways of townships of the first class; or in the acquisition of sewers and drains constructed and owned by individuals or corporation, and of rights in and to use the same; for the removal of nuisances; or for water rates, lighting rates, or sewer rates, and (3) the claim filed to recover for work, material, and services rendered or furnished in the construction, improvement, maintenance, and operation of a project or projects of a body politic or corporate created as a Municipal Authority pursuant to law.

*Id.* Thus, the Act makes explicit distinctions between assessments imposed as a form of taxation, and assessments imposed for municipal works that are completed and affect the physical nature and value of real property.

Our courts have long recognized a distinction between assessments imposed for taxes and those imposed for municipal improvements. As the Pennsylvania Supreme Court has stated:

A tax was anciently defined to be a certain aid, subsidy or supply granted by the commons of Great Britain, and constituting the King's revenue, 4 *Inst.* 216–33, as the name itself imports, from its derivation, it means tribute, and belonged to the King's treasury. And I think the common mind every where has taken in the understanding that taxes are a public imposition, levied by authority of the government, for the purpose of carrying on the government in all its machinery and operations; that they are imposed for a public purpose; whereas municipal charges are often for the benefit of lot-holders on a particular street, and the assessment, as in this instance, induced by the request, made known according to their charter, of a majority of the inhabitants.

The assessment or charge is an equivalent from the owner for the improvement made to the value of the property. Such assessments are not collected like public taxes, but generally, as in this instance, a particular mode of recovering the charge is pointed out by the law. It is evident from the face of all of acts of assembly in relation to this incorporated district, that the legislature had in view the difference between taxes, property so denominated, and charges or assessments for the improvement of particular streets as the advance of population required such improvement.

*The Northern Liberties v. St. John's Church,* 13 Pa. 104, 107 (1850).

Contrary to the majority, and like Appellant, I believe that the only construction of section 33 of the Act that comports with Article 2, Section 1 of the Pennsylvania Constitution requires this court to read "any claim" as meaning "any municipal claim". That is, I believe that the only construction of this section, which would comport with our constitution, is one that permits a municipality to assign its municipal claims to third parties, and the assignee thereby obtains all of the rights of the municipality. I believe that allowing a municipality to assign its tax claims, and transfer its powers in their collection and

enforcement, constitutes an unconstitutional delegation of its taxing authority in violation of Article 2, Section 1 of the Pennsylvania Constitution.

In fact, I believe that our construction of section 33 of the Act is controlled by the Pennsylvania Supreme Court's opinion in *Hagemann's Appeal,* 88 Pa. 21 (1879). In that case, Conrad Schad owned property in the city of Pittsburgh (City). Pursuant to the Act of January 6, 1864, P.L. 1131, the City filed municipal claims against the property. The claims were based on assessments made by the City for the costs of widening, extending, grading and paving streets in the City on the properties benefited thereby. The City initiated a scire facias proceeding on the claims, judgments were obtained, executions had issued, and Schad's property was advertised to be sold to satisfy the judgments. On the day before the sale, Schad went to William Hagemann and asked him to advance the money owed on the claims plus costs to prevent the sale. As a favor to Schad, Hagemann paid the money due to the City's solicitor, who then assigned to Hagemann any rights the City had in the claims.

After Schad's death, the property against which the liens were filed was sold pursuant to an order of the Orphans' Court of Allegheny County (trial court). The amount realized from the sale was sufficient to satisfy Hagemann's claims against the property, but was not enough to satisfy the liens held against the property by other creditors. Hagemann claimed that because his rights were assigned to him by the City, his liens were entitled to the priority enjoyed by the City. When the proceeds of the sale were distributed to Hagemann, the other creditors filed exceptions to the distribution. The trial court sustained the exceptions, and Hagemann appealed the matter to the Pennsylvania Supreme Court.

In reversing the trial court's order sustaining the exceptions, the Supreme Court stated the following:

The [Act of January 6, 1864, P.L. 1131] provides, inter alia, for the widening, extending, grading and paving of streets in the city of Pittsburgh, and for assessing the costs and expenses thereof on the property benefited thereby. It also declared the assessments thus made should be liens on the properties charged therewith from the commencement of the improvement for which they were made. The [trial] court thought the power to make and collect these assessments was an attribute of sovereignty, and could not be delegated or exercised by any other than the city; and as it had received the money, it mattered not in what manner the priority of lien was extinguished. It thought to hold the full claim of the city in these judgments could be assigned would be hazardous to the person against whose property the claim was assessed, and to the public. *It will, however, be observed that this was not an ordinary tax imposed for a public purpose. It was a municipal charge for the benefit of lot-holders on the particular street. The assessment was intended as an equivalent from the owner for the improvement made to the value of his property. They were not to be collected like public taxes.* The act directed the liens to be filed in the District Court of the county, in the same manner as mechanic's liens are filed, and that writs of scire facias and levari facias be issued thereon, in like manner. Hence the mode of assessment to pay some persons damaged by the improvement, as well as the manner of their collection, distinguish these assessments from public taxes generally. Conceding, however, in a broad sense, that in their inception, these assessments may be considered as taxes, how stands the case? When the assignment was made the claim had changed its form. It had not only become a judgment *in rem* ripe for execution; but the latter had actually issued. The collection of the judg-

ment was to be enforced like other judgments *in rem.* No unusual powers of sale attached to the judgment. Its only preference over a mechanic's lien was its priority.

*The facts show that this is not the case of one buying a tax against a taxpayer, without the knowledge or consent of the latter, and with a view to enforce unusual remedies against him ; but it was the purchase of judgments with restricted remedies, at the earnest solicitation of [Schad].*

*Granting then that it would be against the policy of law to permit a municipality to become "a farmer of taxes" and to sell and transfer against the wishes of the tax-payer, a tax, with harsh or unusual powers for its collection, yet that is not this case.* The law gave to the city one mode only for the collection of these assessments. It created no personal liability. The lien of the judgments and right of sale were limited to the specific properties described. To prevent the city from selling the property at a sacrifice, at the urgent request of [Schad], and to give him further time for their payment, [Hagemann] advanced the money. Both parties to the judgments were satisfied. What right has a third party to complain? The interposition of [Hagemann] worked no injury to other creditors. Without any action on his part, the judgments were preferred liens. [Schad], to further his own interests, and to the prejudice of no one, cause the equitable right of enforcing the liens resting on his property to be transferred to [Hagemann]. Under all the circumstances we cannot see that any principle of public policy was thereby assailed. If not, then all the incidents of the preferred liens passed with the assignment to [Hagemann].

*Hagemann's Appeal,* 88 Pa. at 26–27 (citation omitted and emphasis added).

By interpreting section 33 of the Act so as to include the power to assign tax claims against the wishes of the taxpayer, I believe that the majority is allowing Allegheny County to become "a farmer of taxes" in violation of public policy. Moreover, I believe that such a construction constitutes an impermissible delegation of the taxing powers conferred under Article 2, Section 1 of the Pennsylvania Constitution. As a result, I would reverse the order of the Court of Common Pleas of Allegheny County dismissing Catherine Maierhoffer's complaint with prejudice.

