**In re Jacqueline Y. SWINTON.**

**Capital Asset Research Corp., Ltd., Appellant,**

v.

**Jacqueline Y. Swinton, Appellee.**

**No. CIV.A. 02–800.**

United States District Court, W.D. Pennsylvania.

Jan. 14, 2003.

George M. Cheever, Kristin L. Anders, Eric T. Moser, Kirkpatrick & Lockhart, Pittsburgh, PA, for Capital Asset Research Corporation, Ltd.

Margaret J. Fried, Neighborhood Legal Services Association, Pittsburgh, PA, for Jacqueline Y. Swinton.

## MEMORANDUM ORDER

CINDRICH, District Judge.

This bankruptcy appeal raises two interesting issues. First, as a preliminary matter, we must consider the extent to which we are bound to adhere to the Court of Appeals' prediction of state law based on the decision of an intermediate appellate court in light of subsequent opinions by the same state appellate court. Second, we must determine the extent of the rights obtained by a private entity assignee of municipal liens under the Pennsylvania Municipal Claims and Tax Lien Act ("MCTLA"), 53 P.S. § 7101 et seq.

### Procedural History

This appeal arises from a dispositive legal ruling entered by the bankruptcy court on March 25, 2002. The order was issued in an adversary proceeding commenced in appellee's Chapter 13 bankruptcy case. Appellant Capital Asset Research Corporation ("CARC") asserted claims against the debtor as the assignee of the municipality's liens for unpaid utility bills. The bankruptcy court's order granted summary judgment to the debtor, concluding that CARC's claims were unsecured as of the date of the bankruptcy filing. The Chapter 13 Plan does not provide for any distribution to unsecured creditors. The Bankruptcy Court, therefore, certified its order as a final judgment pursuant to Fed. R.Civ.P. 54(b) and Bankruptcy Rule 7054(a).

### Hierarchy of Authority

Several other courts have faced the issues presented in this appeal. In *Maierhoffer v. GLS Capital, Inc.*, 730 A.2d 547 (Pa.Commw.1999), the Pennsylvania Commonwealth Court concluded that government entities had the power to assign their rights relating to the tax, water and sewer claims and liens. In *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 389–90 (3d Cir.2000), the Court of Appeals for the Third Circuit stated that *Maierhoffer* was decided correctly and held: "NTF as assignee thereby **stands in the shoes** of the government entities with respect to these claims and liens. Therefore, NTF is entitled to collect interest and penalties on the assigned claims **to the same extent** as the government entities are entitled under relevant state and local law." *Id.* (emphasis added).

Subsequently, the Pennsylvania Commonwealth Court issued a decision in *Pentlong Corp. v. GLS Capital, Inc.*, 780 A.2d 734 (Pa.Commw.2001). In *Pentlong*, the Commonwealth Court acknowledged that under *Maierhoffer*, municipal claims could be assigned, but explained that *Maierhoffer* "did not specifically address, however, what rights GLS [the assignee] acquired." *Id.* at 739. The *Pentlong* Court concluded: "What GLS bought was not a delinquent tax but an *in rem* lien filed and sold under the Municipal Claims

Act. In fact, when GLS bought the liens and paid the County, the underlying delinquent tax was satisfied." *Id.* at 746 (distinguishing *Pollice* ). The Pennsylvania Supreme Court has not spoken on the issue, and indeed, rejected an application for allocatur in the *Maierhoffer* case.

 Under these circumstances, the question arises as to whether we are bound to follow the Court of Appeals' analysis in *Pollice.* The Court of Appeals for the Third Circuit has not directly answered this question and the district courts have come to different conclusions. Some have adopted a per se rule that district courts are bound by the Court of Appeals' ruling. *See, e.g., Itzkoff v. F & G Realty of New Jersey, Corp.,* 890 F.Supp. 351 (D.N.J.1995). Other courts have applied a more nuanced rule that permits district courts to consider developments in state law. We are persuaded by, and will adopt, this latter position, as articulated in *Hittle v. Scripto–Tokai Corp.,* 166 F.Supp.2d 159, 161–62 (M.D.Pa.2001):

> It is axiomatic that a federal court sitting in diversity must apply state substantive law and federal procedural law. *Chamberlain v. Giampapa,* 210 F.3d 154, 158 (3d Cir.2000) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). In this case, it is undisputed that Pennsylvania law applies. In the absence of a reported decision by the state's highest court addressing the precise issue before it, a federal court applying state substantive law must predict how the state's highest court would rule if presented with the case. *See Nationwide Mutual Ins. Co. v. Buffetta,* 230 F.3d 634, 637 (3d Cir. 2000) (citation omitted). A federal court may give due regard, but not conclusive effect, to the decisional law of lower state courts. *Id.* (citation omitted). "The opinions of intermediate appellate

state courts are 'not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.' " *Id.* (quoting *West v. AT & T Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940)). "In predicting how the highest court of the state would resolve the issue, [a federal court] must consider 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.' " *Id.* (quoting *McKenna v. Ortho Pharm. Corp.,* 622 F.2d 657, 663 (3d Cir.1980)). From the above recitation of the law, it is apparent that in general, a federal court applying state law, when faced with an absence of state supreme court precedent, must predict how the state supreme court would decide the issue before it. Less clear, however, is the extent to which a federal district court is bound by its court of appeals' interpretation of state law, especially if a subsequent state appellate court contradicts the federal appellate court. The Third Circuit has not given very much guidance on the subject, but has suggested that the only law that is binding on a federal court is the jurisprudence of the state supreme court, and that even a decision by a federal court of appeals does not bind a district court. *See, e.g., Aceto v. Zurich Insurance Co.,* 440 F.2d 1320, 1321 (3d Cir.1971) ("No one may properly rely upon what we have held as more than persuasive on a question of Pennsylvania law so long as the Supreme Court has not ruled upon that legal question."); *but see Lennig v. New York Life Insurance Co.,* 130 F.2d 580, 581 (3d Cir.1942) (indicating that where a federal court of appeals interprets state law, a district court is bound by that interpretation at

the retrial of the case unless it is clear by subsequent statute or binding state court decision that the court of appeals erred). District courts in this circuit have been inconsistent, but it has been written that a district court is bound by its court of appeals on questions of state law unless "later state court decisions indicate that the Court of Appeals' earlier prediction of state law was in error." *Stepanuk v. State Farm Mutual Automobile Insurance Co.*, No. CIV. A. 92–6095, 1995 WL 553010, at *2 (E.D.Pa. September 19, 1995) (collecting cases).

Accordingly, we conclude that we may consider *Pentlong* to determine whether the Court of Appeals' earlier prediction of Pennsylvania law in *Pollice* was in error.

*Rights of Municipal Lien Assignees*

■■ MCTLA Section 7147, relating to assignment of claims, states: "Any claim filed or to be filed, under the provisions of this act, and any judgment recovered thereon, may be assigned or transferred to a third party, either absolutely or as collateral security, and **such assignee shall have all the rights of the original holder thereof.**" (Emphasis added.) The question here is whether this provision entitles CARC to utilize the procedures set forth in the MCTLA for municipalities to collect those liens, most importantly, the status as a priority lienholder under Section 3 of the MCTLA, 53 P.S. § 7106(a), and the three-year automatic perfection period set forth in Section 9 of the MCTLA, 53 P.S. § 7143.

In the view of the bankruptcy judge, although the MCTLA gives the city a three-year exemption from recording, that exemption does not transfer to a private party. As she stated in the hearing dated February 20, 2002: "[CARC] buy[s] the claim and for state tax purposes that's called a tax lien. But for bankruptcy purposes it's not a lien. [CARC] bought the claim. And I think that's the difference that the two jurisdictions have in using that word somewhat differently. So I think the issue here is yes, there was a lien that could have been assigned of record. It just wasn't assigned of record. In the hands of the city it didn't have to be. But in the hands of a private entity assignee I think it did have to be." Transcript at 33–34. The bankruptcy court cited and incorporated its own opinion in another matter. *See In re Thomas*, 1999 WL 1102991 *6 (*vacated as advisory*, Civil Action No. 01–385 (W.D.Pa. March 21, 2002)). There is some support for the bankruptcy court's decision in *Pentlong*. In *Pentlong*, the Commonwealth Court rejected the assignee's argument "that when it bought the liens, it not only bought the face amount of the liens and interest on those liens, but it also bought the County's right to utilize the procedures set forth in the Municipal Claims Act to collect those liens." 780 A.2d at 739.[1] The Court commented that *Pollice* was problematic because it was based on the premise "that a 'delinquent tax' and a tax claim are the same thing, which they are not." 780 A.2d at 746. The Court went on to explain that when the assignee "bought the liens and paid the [municipality], the underlying delinquent tax was satisfied." *Id.*

We disagree with the bankruptcy court and *Pentlong*. Fundamentally, we must construe a statute. Under Pennsylvania law, statutes are presumed to use words in their plain everyday sense. *Maierhoffer*, 730 A.2d at 550 (citing *Treaster v. Union Twp.*, 430 Pa. 223, 242 A.2d 252, 255

---

1. We note that other portions of the *Pentlong* opinion support appellant's argument. For example, the Court held that assignees are limited to the same interest rate as municipalities.

(1968)). In 1 Pa.C.S.A. § 1903, the Pennsylvania legislature has instructed that "words and phrases shall be construed ... according to their common and approved usage."

There is nothing in the statute that indicates that assignees should be treated differently from municipalities for purposes of these claims. Section 7147 of the MCTLA states that an "assignee shall have **all** the rights of the original holder." (Emphasis added). In *Maierhoffer,* also interpreting Section 7147, the court construed the term "any" to be an inclusive term synonymous with "all." 730 A.2d at 547. It cited the Pennsylvania Supreme Court's opinion in *In re Belefski's Estate,* 413 Pa. 365, 196 A.2d 850, 855 (1964), which stated: "The word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive.... The legislative employment of the word 'any' adds further emphasis to the conclusion that it was the legislative intent to exempt the proceeds of the Fund from *all* taxes ...." (Emphasis in original). The court has not located, and counsel have not cited, any Pennsylvania Supreme Court cases construing the term "all." Thus, we conclude that *Belefski's Estate* controls: because if "any" means "all," then "all" is synonymous with "any." It is a broad, inclusive term.

This construction accords with the common and approved usage of the term "all." As found in the Websters II New Riverside University dictionary (1988), "all" means: (1) the total entity or extent of; (2) the whole number, amount, or quantity of; (3) the utmost possible of; (4) every; (5) any whatsoever. The word "all" is not a technical term that requires a narrower construction.

Appellee's reliance on the Pennsylvania Supreme Court's opinion in *City of Philadelphia v. Egolf,* 314 Pa. 216, 171 A. 604 (1934), is misplaced. The Court in that case was interpreting a prior municipal claims statute, the Act of April 17, 1929, 53 P.S. § 482, which provided: "In addition to the remedies provided by law for the filing of liens for the collection of municipal claims, all **cities, boroughs, incorporated towns, and first class townships** may proceed for the recovery and collection of municipal claims by action of assumpsit...." (Emphasis added). The Court, construing this statute strictly, concluded that "the statutory remedy now under our review is available only to 'all cities, boroughs, incorporated towns, and first class townships.'" *Id.,* 171 A. at 606. The Court held that these terms did not include a contractor performing work for a municipality, particularly since the Legislature had provided an alternative procedure for the collection of municipal claims by contractors. *Id.* By contrast, there is no language in Sections 7106, 7143 or 7147 of the present MCTLA that specifically limits their scope to municipalities.

In sum, despite the subsequent ruling of the Commonwealth Court, we agree with the Court of Appeals' analysis and prediction in *Pollice* that the Pennsylvania Supreme Court would hold that under Pennsylvania law, an assignee of municipal liens, such as CARC, "stands in the shoes" of the government entity and may collect the liens to the same extent as the municipality. Specifically, we conclude that the automatic three-year perfection period set forth in Section 7143 of the MCTLA may be invoked by assignees. We further conclude that a lien's priority, as determined in Section 7106 of the MCTLA, is not affected by the assignment from a municipality to a private entity. We believe our holding is in accord with sound public policy because the economic impact of these conclusions is that the market value of

these loans, for municipalities and their potential assignees, will be increased.

*Conclusion*

In summary, we believe that the bankruptcy court made an error of law and we therefore REVERSE the Order dated March 25, 2001. As the parties have recognized, as a result of this decision the bankruptcy court will have to resolve a variety of factual issues. Accordingly, this matter is remanded for further proceedings in accordance with this order. The clerk is directed to mark this case closed.