GLS CAPITAL, INC., Assignee of
the County of Allegheny

v.

Arthur K. DAVIS, Appellant.

GLS Capital, Inc., Assignee of
the County of Allegheny

v.

Louis Hencz and Mary Hencz,
Husband and Wife

v.

Allegheny County, Borough of West
Mifflin and West Mifflin Area
School District

Appeal of: Borough of West Mifflin.

GLS Capital, Inc., Assignee of
the County of Allegheny

v.

Charles Lawrence and Lois Lawrence,
Husband and Wife

v.

Allegheny County, Borough of West
Mifflin and West Mifflin Area
School District

Appeal of: Borough of West Mifflin.

GLS Capital, Inc., Assignee of
the County of Allegheny

v.

Renee Merz

v.

Allegheny County, Borough of West
Mifflin and West Mifflin Area
School District

Appeal of: Borough of West Mifflin.

GLS Capital, Inc., Assignee of
the County of Allegheny

v.

Pearl Rose

v.

Allegheny County, Borough of West
Mifflin and West Mifflin Area
School District

Appeal of: Borough of West Mifflin.

GLS Capital, Inc., Assignee of
the County of Allegheny

v.

John W. Ruhl

v.

Great American Federal Savings &
Loan Association, Allegheny County,
Borough of West Mifflin and West
Mifflin Area School District

Appeal of: Borough of West Mifflin.

GLS Capital, Inc., Assignee of
the County of Allegheny

v.

John Vovolka and Bessie Vovolka
Husband and Wife

v.

Allegheny County, Borough of West
Mifflin and West Mifflin Area
School District

Appeal of: Borough of West Mifflin.

GLS Capital, Inc., Assignee of
the County of Allegheny

v.

Robert D. Morton

v.

Borough of Homestead and Steel
Valley School District

Appeal of: Steel Valley School District.

GLS Capital, Inc., Assignee of
the County of Allegheny

v.

Nick Shavor and Susan Shavor,
Husband and Wife

v.

Allegheny County, Borough of Munhall
and Steel Valley School District

Appeal of: Steel Valley School District.

GLS Capital, Inc., Assignee of
the County of Allegheny

v.

George Trout and Anna Trout,
Husband and Wife

v.

Allegheny County, Borough of
Munhall, and Steel Valley
School District

Appeal of: Steel Valley School District.

GLS Capital, Inc., Assignee of
the County of Allegheny

v.

Thomas H. Clipp, Sr.

v.

Allegheny County, Borough of
Homestead and Steel Valley
School District

Appeal of: Steel Valley School District.

GLS Capital, Inc., Assignee of
the County of Allegheny

v.

William A. Godbolt and
Yvonne Godbolt

v.

Allegheny County, West Homestead
Borough, Steel Valley School District
and Capital Asset Research Corpora-
tion

Appeal of: Steel Valley School District.

GLS Capital, Inc., Assignee of
the County of Allegheny

v.

John Koroly and Darlene Koroly,
Husband and Wife

v.

Allegheny County, Borough of
Homestead and Steel Valley
School District

Appeal of: Steel Valley School District.

GLS Capital, Inc., Assignee of
the County of Allegheny

v.

Pauline S. Deutsch

v.

Allegheny County, Borough of
Homestead and Steel Valley
School District

Appeal of: Steel Valley School District.

GLS Capital, Inc., Assignee of
the County of Allegheny

v.

Donald M. Duda and The United
States of America

v.

The United States of America, Alleghe-
ny County, Borough of Munhall and
Steel Valley School District

Appeal of: Steel Valley School District.

Commonwealth Court of Pennsylvania.

Argued Feb. 1, 2006.
Decided May 15, 2006.

Bernard S. Rubb, Sewickley and Donald
C. Fetzko, West Mifflin, for appellants.

Michael G. McCabe, Pittsburgh, for ap-
pellee, GLS Capital, Inc.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN JUBILIRER, Judge, and SIMPSON, Judge.

OPINION BY President Judge COLINS.

The Borough of West Mifflin, Steel Valley School District, and Arthur K. Davis, an individual property owner, (collectively, the Appellants) have appealed an order of the Court of Common Pleas of Allegheny County that granted a petition for a rule to show cause filed by GLS Capital, Inc. (GLS), pursuant to Section 31 of the law known as the Municipal Claims and Tax Liens Act (Municipal Tax Claims Law or Act), Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. § 7281. The pertinent part of this provision allows for sale by bid of tax-delinquent properties for potentially only the costs associated with a sheriff's sale and provides for the highest bidder to obtain title free and clear of all tax and municipal liens and claims. The order had the effect of permitting GLS to sell properties, whose owners had become delinquent in their County tax obligations, free and clear of all tax and municipal claims, liens, mortgages, charges, and estates encumbering the properties. The granting of the petition for the rule to show cause would divest not only the individual title owners of their property but would also extinguish the liens and tax obligations attached to the properties held by other municipal entities such as the school district and borough that now appeal the trial court's order.

■ The procedural and factual history of this case follows. Allegheny County entered into a Purchase and Servicing Agreement with GLS in September 1997 through which the County assigned to GLS more than 600,000 tax liens for tax years up through 1995. The County assigned additional tax liens to GLS by virtue of a subsequent Liens Purchasing and Servicing Agreement signed in December 1997. The County and GLS amended these two agreements in September 1998 to provide for the assignment of additional 1997 liens. They also entered into a Vacant Land Purchase and Servicing Agreement for the 1998 tax year. The transfer of rights included "all right, title and interest of the [County] in and to the Tax Lien Portfolio including all rights provided by applicable Laws for collection and enforcement of such Tax Liens." Pursuant to the agreements, GLS sought to obtain payments of the delinquent taxes that gave rise to the liens; however, after failing to obtain such payment, GLS initiated scire facias [1] proceedings against the properties. No owners contested the claims at issue in the scire facias actions, and the court entered judgment in favor of GLS. After failing to obtain the judgment amounts, GLS initiated an action under Section 29 of the Act, 53 P.S. § 7279, by which GLS sought to sell the properties at the upset price through sheriff's sales (a bid that minimally covers costs, expenses and all taxes and municipal claims). No party bid on the properties at the tax sale. The fact that GLS received no bids at the upset sale triggered the provision of Section 31 of the Law allowing so-called "second sales" of the properties to the highest bidder unencumbered by any lien, judgment, or other property interest. 53 P.S. § 7281.

This Court has had an opportunity to consider the "second sales" provision in a case in which one taxing authority (the City of Allentown) sought to sell properties free and clear under Section 31 and another interested municipal entity (Le-

---

1. Scire facias is an in rem proceeding by which a lien holder, such as a municipality obtains a judgment on the lien. *Shapiro v. Center Township, Butler County,* 159 Pa. Cmwlth. 82, 632 A.2d 994, 996–7 (1993), *petition for allowance of appeal denied,* 537 Pa. 635, 642 A.2d 488 (1994).

high County) sought to stop the sale that would divest the County of its own tax lien interest. *City of Allentown v. Kauth,* 874 A.2d 164 (Pa.Cmwlth.2005).

Although the issue the Lehigh County raised in that case is different from the issue in this case, that decision is noteworthy because the Court, while concluding that the second sale provision does effectuate the divestiture of claims held by other municipalities holding tax or municipal claims, noted that the ultimate purpose of the provision is to return property to the tax rolls so that they may again produce tax revenues that benefit all the municipal taxing authorities.

The distinct issue presented by the Appellants in this case is whether a private party may stand in the shoes of a municipal taxing authority in seeking to place properties for sale free and clear of all outstanding tax and municipal claims. The pertinent language of Section 31 provides as follows:

> **In case the property be not sold** for a sum sufficient to pay all taxes and municipal claims, together with the costs thereon, **the plaintiff in any such claim may** postpone the sale, without payment of costs, and **file his petition setting forth** that more than one year has elapsed since the filing of his claim; **that he has exposed the property to sheriff's sale thereunder, and was unable to obtain a bid sufficient to pay the upset price in full;** and, if a municipal claimant other than a municipality, that he will bid sufficient to pay the upset price, and upon the production of searches or a title insurance policy showing the state of the record and the ownership of the property, and of all tax and municipal claims, mortgages, ground-rents, or other charges on or estates in the land, the court shall grant a rule upon all parties thus shown to be interested to appear and show cause why a decree should not be made that said property be sold, freed, and cleared of their respective claims, mortgages, charges, and estates. **If,** upon a hearing thereafter, **the court is satisfied** that service has been made of said rule upon the parties respondent, in the manner provided in this act for the service of writs of scire facias to obtain judgments upon tax and municipal claims, and that the facts stated in the petition be true, **it shall order and decree that said property be sold at a subsequent sheriff's sale** day, to be fixed by the court without further advertisement, **clear of all claims, liens, mortgages, charges, and estates, to the highest bidder at such sale; and the proceeds realized therefrom shall be distributed in accordance with the priority of such claims;** and the purchaser at such sale shall take, and forever therafter have, an absolute title to the property sold, free, and discharged of all tax and municipal claims, liens, mortgages, charges, and estates of whatsoever kind, subject only to the right of redemption as provided by law.

(Emphasis added.)

In *Maierhoffer v. GLS Capital, Inc.,* 730 A.2d 547 (Pa.Cmwlth.1999), *petition for allowance of appeal denied,* 561 Pa. 680, 749 A.2d 473 (2000), this Court held that Section 33 of the Law provided the County with the authority to assign its tax claims, and judgments recovered under a tax claim, to a third party. The Supreme Court confirmed this holding in *Pentlong Corporation v. GLS Capital, Inc.,* 573 Pa. 34, 820 A.2d 1240 (2003).

However, the Appellants place before this Court the question of whether the rights that a municipality may transfer also provide GLS with the right to proceed in the place of the County to sell

properties free and clear under Section 31, thereby potentially divesting other municipalities of their tax liens. The statutory provision upon which the Supreme Court relied upon in *Pentlong* and which the trial court considered in its decision provided [2] at relevant times in pertinent part that

> "[a]ny claim filed or to be filed, under the provisions of this act, **and any judgment recovered theron, may be assigned or transferred to a third party**, either absolutely or as collateral security, and such assignee shall have all the rights of the original holder thereof.
>
> Where the claim has been paid in full by one of several defendants therein, whether originally named as such or allowed to intervene and defend, it shall be satisfied of record as to him, and marked to his use as against the other defendants, pro rata, according to their respective interests in the property bound by the claim.

Section 33 of the Act, 53 P.S. § 7147 (emphasis added).

The Supreme Court in *Pentlong* recognized that Allegheny County could assign any tax claim right it itself possesses. The Court looked at the specific authority embodied in Section 33 and concluded that GLS, as the assignee of the county's rights, could recover interest and fees, because the County itself could have recovered those items. However, with regard to counsel fees, the Court concluded that the General Assembly, by using the phrase "municipal claim," provided only Counties with the right to obtain counsel fees in pursuing a municipal claim. The Court rejected GLS's argument that, in the context of the counsel fee provision, the General Assembly meant for the term "municipal claim" to encompass both tax claims arising from general taxing authority and special taxing authority (in which the taxing authority imposes a special tax for improvements like curb cuts on an individual's property). Because the General Assembly had not specifically included the right to counsel fees for tax claims, as compared to municipal claims, the Supreme Court concluded that GLS could not collect counsel fees, a right that the county itself did not possess. Thus, the Supreme Court looked at the specific right at issue—counsel fees, but having concluded that the provision only allowed for counsel fees in the context of municipal claims, and not tax claims, opined that the legislature did not intend for plaintiffs to obtain counsel fees in pursuing general tax claims.

Appellants argue that, notwithstanding the Supreme Court's evaluation of the claim in *Pentlong,* as a matter of statutory construction, only municipalities, and not for-profit entities, can bid costs and obtain a freed and cleared title to liened property under the second-sales provision of Section 33 of the Law.[3] Appellants point first to Section 29 of the Act, 53 P.S. § 7279, a provision not at issue in this case, which addresses the upset sale price and sheriffs' sales of liened property. That provision permits "plaintiffs" in any judgment recovered on a tax or municipal claim, after paying sheriff's costs, to set the upset sale price sufficient to satisfy all taxes and municipal claims. This section also allows such plaintiffs to buy such properties for the upset price as long as no higher bid is received. However, if the "real plaintiff" in such a proceeding is a municipality, and

---

2. In 2003, after the Appellants challenged the sales, the General Assembly amended Section 33 by the Act of August 14, 2003, P.L. 83.

3. As will be discussed below, it is by no means certain that GLS would be able to obtain the properties free and clear for only costs.

no party bids the upset price, such plaintiffs may purchase the property for the sheriff's costs, but subject to the liens of all taxes and municipal claims.

Appellants rely upon this section to argue that the General Assembly similarly distinguished between municipalities as plaintiffs and other non-municipal plaintiffs in Section 31's second sale provision, by using the phrase "municipal claimant other than a municipality." The Appellants rely first upon the reference in Section 31 to the distinct category of plaintiffs who are "municipal claimant[s] other than a municipality." Such plaintiffs must agree to bid a price in such sales that is equal to the upset price, i.e., the price to satisfy all tax and municipal claims. The Appellants argue that GLS, not being a municipality **in fact,** is a "municipal plaintiff other than a municipality," and therefore this provision, which requires such claimants to pay the upset price, controls and bars GLS from obtaining property free and clear.

Citing the well-known tenet of statutory construction that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit," 1 Pa.C.S. § 1921(b), Appellants claim that the above-cited words are so clear as to leave no doubt that the General Assembly meant that plaintiffs that are not municipalities in fact may not obtain a free and clear title under Section 31 as a municipality may.

The Appellants argue that the use of the word "plaintiffs" in the second sale provision could mean: (1) a municipality; (2) a use plaintiff,[4] or (3) an assignee.

The word also could mean all three. Appellants claim that, by declining to provide "municipal claimants other than municipalities" with the right to obtain a free and clear title, the General Assembly must have meant to distinguish assignees such as GLS, which has the rights of the original claimholder—the County—but is not a municipality. The Appellants follow with the argument that GLS is not a governmental entity and is not empowered to collect taxes. They complain that taxing entities such as other municipalities and school districts "cannot tolerate losing tax dollars to GLS." However, we must acknowledge here, that, in accordance with *County of Lehigh*, these municipalities could just as easily lose these tax liens and claims to another municipality.

Appellants argue that Section 31 does not provide GLS, a private-entity assignee, the right to stand in the shoes of the municipality under Section 31. In support of their interpretation of Section 31, the Appellants rely upon two decisions of our Supreme Court, *City of Philadelphia v. Egolf,* 314 Pa. 216, 171 A. 604 (1934), and *City of Philadelphia v. Taggart,* 379 Pa. 7, 108 A.2d 68 (1954). *Egolf* involved an action in assumpsit in which a contractor hired by the City of Philadelphia to perform paving and curbing had assigned to another paving company liens it obtained against the property. The assignor had filed municipal liens, issued writs of scire facias, obtained judgment, and assessed damages. The assignee then filed the action in assumpsit to recover the judgment amount. The property owner filed an affidavit of defense asserting that only the City had the statutory authority to pursue

---

4. As this Court noted in *Maierhoffer,* 730 A.2d at 550, n. 11, the term "use plaintiff" is used to describe a contractor who performs some required improvement for the municipality on private property, an example of which might be sidewalk improvements or curb cuts. Un-

der the Act such contractors are to be paid from a municipal assessment of the property owner, and when the property owner fails to pay the assessment, the contractor may not sue the municipality, but obtains a lien for which he can file a claim under the Act.

an action in assumpsit to recover judgment. While the provision at issue in the case before this Court pertains to the rights associated with recovery **in rem,** the assumpsit provision at issue in *Egolf* allows for recovery in an assumpsit proceeding against the property owner for municipal claims. The Supreme Court noted Section 33—the assignment provision—and opined that the General Assembly, by enacting a provision that made an owner personally liable for municipal claims had fixed "the rights and liabilities of the parties" in derogation of the common law, and as such, the Court was required to strictly construe the language of the provision. Accordingly, the Court stated, "[t]he legislature must be regarded as meaning what it has plainly expressed." 314 Pa. at 220, 171 A. at 605–6. Hence, because the provision on its face gave only municipalities the right to proceed in an assumpsit action, the Court concluded that the assignee, a non-municipality, could not pursue its assumpsit action. The Court concluded that the Act's in rem proceedings provided the sole recourse for assignees.

In *Taggart,* the Supreme Court considered whether a party that had become an owner of property by assignment of a post-upset sale mortgage and municipal claim, could pursue an action under Section 32 of the Act[5] to redeem the property. The applicant in that case relied upon Section 33, 53 P.S. § 7147, for the proposition that, as an assignee, he had the same right under the Act to redeem the property as the original holder of the interest. Following its earlier decision in *Haughey v. Dillon,* 379 Pa. 1, 108 A.2d 69 (1954), the Court opined that the General Assembly "intended that only those whose claims or interests were discharged by the tax sale should have the right of redemption. It did not give such right to those who ac-

quired the claims subsequent to the sale." 379 Pa. at 10, 108 A.2d at 69.

Thus, these two decisions to some extent limit the rights bestowed by virtue of assignment or transfer under the broad language of Section 33. In the first example, the strict interpretation rested on the specific legislative limitation of the parties that can pursue relief against a property owner in an assumpsit action. In the second example, the Court limited the right to seek redemption following a tax upset sale to those who had an interest in the property before the sale occurred.

As a matter of statutory construction the Appellants rely on the reasoning in *Taggart* as an equally applicable analysis of the second sale provision at issue in this case. Parties in both that case and this invoked Section 33 to support the proposition that assignees may utilize all the Act's provisions relating to tax liens to the extent a municipality could. The Court rejected that notion in *Taggart* by concluding that Section 33 is a general provision in conflict with the more specific language of Section 32, which prevailed. The Appellants argue that Section 31—the second sale provision—is a provision of specific language the substance of which prevails over the general language of Section 33, the assignment provision. Of course, as the Appellants themselves point out, in applying the rules of statutory construction, courts need only consider whether the specific prevails over the general provision when the two are in conflict. 1. Pa.C.S. § 1933. The Appellants suggest the General Assembly had a practical reason for adopting Section 33, that is, simply to enable contractors to receive liens as payment for municipal improvements. With the above arguments in mind we will address the core issue in this case. We

---

**5.** Formerly found at 53 P.S. § 2052.

first consider the Appellants' reliance on the Supreme Court's decisions in *Egolf* and *Taggart*.

■ We agree with the trial court's conclusion that *Egolf* and *Taggart* are distinguishable. In *Pentlong*, the Supreme Court distinguished these two cases by noting that neither involved the assignment of rights directly from the municipality to the assignee. As summarized by the Supreme Court, "in *Taggart*, the assignee purchased a municipal lien after it was discharged, but then tried to redeem the property after a sheriff's sale. Given that the assignee did not receive his rights from a municipality, this Court refused to give him the right of redemption." 573 Pa. at 49, 820 A.2d at 1249. The Court rejected the argument that *Egolf* was applicable, noting that (1) the right at issue—a party's power to pursue an assumpsit action—was expressly reserved for municipalities, and (2) the contractor/assignee had not received its interest from the municipality. The Court appeared to find this latter fact most significant in concluding that those cases were distinguishable from *Pentlong*, where the County directly assigned its rights to GLS. In summary, the Supreme Court stated, "the County explicitly assigned to GLS its right to collect and enforce the tax liens ... [and the] holdings in *Egolf* and *Taggart* are inapplicable...." 573 Pa. at 49, 820 A.2d at 1249.

Underpinning the Supreme Court's analysis was the direct legislative grant in Section 33 to municipalities to assign all the rights that municipalities have to a third party. Moreover, following the Court's reasoning, one must conclude that, when a municipality directly transfers its rights, the assignee obtains every right held by the municipality except those rights that the General Assembly has specifically retained for municipalities, as in *Egolf*. In addition, the Supreme Court's reasoning reflects a basic recognition of the fact that the legislature must have intended that direct assignees such as GLS will benefit as a result of the action it takes in the place of the municipality.

The present case is similarly distinguishable from *Egolf* and *Taggart* in that GLS, as recognized in *Pentlong*, and unlike the moving parties in those cases, received its interests in the properties directly from the County. However, the Court in *Pentlong* was considering a different provision of the Act, and so this Court must necessarily consider the Appellants' statutory construction arguments.

We believe that the trial court correctly considered how to give meaning to all of the provisions of the Act, and did so without offending the rule of statutory construction, relied upon by the Appellants, that courts should not ignore the clear meaning of a statute in order to give effect to its purpose. We must begin with the initial question of whether proceedings under the second sale provision fall with the meaning of Section 33's assignment authority. It may seem obvious that the right to pursue a second sale is part and parcel of "any claim filed or to be filed" or a "judgment recovered," but the question bears consideration. A hypothetical may provide some guidance to engaging in such evaluation. We imagine that the County pursued all of its rights to the point of obtaining judgment. Once it obtained a judgment, the County was free to fix an upset price for the purpose of an initial sheriff's sale. If the County had assigned GLS its judgments at this juncture, could GLS have set the upset price and proceeded to sheriff's sale? In this case it obviously did so, without any challenge. Section 29 of the Act provides for "plaintiffs" who have recovered judgments to proceed to an initial sheriff's sale. 53 P.S. § 7279. Because Section 33 allows assignees of

judgments all the rights of the original holder, there seems clear statutory authority for an assignee to pursue sheriff's sales. Section 31 then allows "plaintiffs" to proceed to a second sale without the encumbrances of liens. Section 31 seems on its face to provide the same plaintiff who had the right under Section 29 to seek an initial sheriff's sale to proceed, if unsuccessful in that first attempt, to sell under Section 31's free and clear provision.

The Appellants hinge their statutory construction argument in great part upon a phrase used in Section 31—"municipal claimant other than a municipality." The nomenclature adopted by the General Assembly in other provisions of the Act has particular relevance in this regard. In creating a distinction between the types of taxes a municipality may impose, i.e., general (typical school or property taxes) or special (municipal improvement taxes) taxes, the legislature created the term "municipal claim" to apply to the latter category. Both municipalities and private entities such as contractors may obtain liens for work performed under such authority. Thus, a municipal claim can be held by both a municipality and a non-municipal party. We believe that the General Assembly, in using the term "municipal claimant other than a municipality," meant the claims arising from this distinct type of municipal tax, rather than a general tax such as formed the basis for the underlying claims in this case.

Assuming that this explanation for the language is correct, under *Pentlong,* and in a manner not discordant with either *Egolf* and *Taggart,* the trial court properly concluded that GLS, having received its assignment directly from the County, together with the straightforward language of Section 33 permitting the County to assign its tax claims, and the clearly worded authority for "plaintiff[s]" to expose a property under the second sale provision, was simply exercising one of the concomitant rights of a direct assignee.

Although we conclude that Sections 31 and 33 can be read in a harmonious fashion and that the statutory language is clear, there are a number of pragmatic reasons why this interpretation makes sense. First, the General Assembly made a legislative judgment, as approved in *Maierhoffer* and *Pentlong,* that municipalities could assign their interests in tax claims to private parties. Once a municipality elects to divest itself of its rights, the assignee is presumed to have a protected interest in the rights it has obtained. Once they have such rights, they should be in no greater or lesser position than other municipalities or direct assignees (of other municipalities perhaps) to pursue recovery on their interests.

Second, as suggested in *City of Allentown,* the General Assembly adopted the second sales provision as a recognition of the need to change the status quo when circumstances indicate that obtaining the upset sales price is likely impossible. The Court cannot ignore the reasonableness of GLS's position that the properties at issue will continue to fail to produce needed tax revenues unless they are sold under the second sales provision. Under the provision, if the properties are submitted to a second sheriff's sale, there are at least two scenarios. The first is that some party will offer bids that cover some, if not all, of the upset price. The second is that GLS, as the Appellants predict, will obtain properties without any liens attached. If the first scenario occurs, some of the tax debt will be recovered. If the second scenario occurs, GLS, as property owner will begin to be responsible for new assessments. GLS therefore has an incentive to return the properties to the tax rolls.

In a sense, GLS, as assignee, also stands in the shoes of the municipality to its own detriment in that the judgments it obtained will also be divested. The Act anticipates that although properties will be sold without any encumbrances, they must proceed to sale to the highest bidder. At this juncture, GLS, as well as the other municipalities, has no certain claim on acquiring the properties at the sales. It must compete with any other interested buyer. There is no way to know ahead of the sales that GLS will reap the bargains that the Appellants claim are awaiting the formality of the second sheriff's sale.

Although the Appellants complain that the second sale will divest them of their interests at the hands of a private entity, the municipal appellants have the same opportunity to buy the property by competing with GLS. Section 33, penultimate paragraph. While this may not present a practical or administratively feasible recourse for those municipalities, the General Assembly apparently considered the predicament of municipalities with competing claims. Regardless of whether the party seeking the second sale is a municipality or a private direct assignee of a municipality, other parties with judgment liens, including municipalities such as the school district and borough in this case, are in the same position. The fact of GLS's status as a private entity is irrelevant in the end.

Based upon the foregoing, we affirm the order of the trial court.[6]

***ORDER***

AND NOW, this 15th day of May 2006, the order of the Court of Common Pleas of Allegheny County in the above-captioned appeals is affirmed.

---

**6.** As noted in footnote 2 of this opinion, the General Assembly amended Section 33 in 2003. The Appellants argue that the courts cannot apply the amended version of Section 33 to the present case, because it would constitute unconstitutional retroactive application. However, the trial court based its decision on the former version of the Act, and it is upon this version that the Court bases its opinion. Further, as GLS points out, no party raised the question of whether the trial court should apply the new version. Accordingly, we decline to address this issue. We also do not address GLS's argument that the School District and the Borough lack standing to appeal. GLS did not raise this issue before the trial court. In Pennsylvania, unlike the federal courts, standing is not jurisdictional, and accordingly we cannot address it sua sponte. Because GLS did not raise the issue, we deem it waived.