**ALLEGHENY COUNTY**

v.

**GOLF RESORT, INC., Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 5, 2009.
Decided June 4, 2009.
Reargument Denied En Banc
July 30, 2009.

Michael F. Fives, Pittsburgh, for appellant.

Jake S. Lifson, Pittsburgh, for appellee, Golf Resort, Inc.

Thomas E. Reilly, Pittsburgh, for appellee, James Swindell.

BEFORE: LEAVITT, Judge, and BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Golf Resort, Inc. (Golf) appeals from the order of the Court of Common Pleas of Allegheny County (trial court) which denied Golf's petition to set aside the sheriff's sale. We reverse and remand.

Golf is the owner of a parcel of land consisting of approximately 100 acres located in Allegheny County in addition to 28 acres located in Westmoreland County. Thomas Rodgers (Rodgers) is the 89 year-old president and shareholder of Golf. The 128 acres contains a 9-hole par 3 golf course, a 19-hole miniature golf course, a 50 station driving range and five or six buildings.

On May 5, 2005, Allegheny County (County) commenced a *scire facias* proceeding against Golf to collect delinquent 2001 taxes with respect to property located at 1450 Greensburg Road in New Kensington (Property)[1], which contains 68 acres and is part of the previously mentioned 128 acres. At that time, Golf owed, with interest and penalties, $2,770.75. Golf was served on May 10, 2005. Golf did not respond following service and on February 27, 2006, after giving notice required by Pa. R.C.P. No. 237.1, County obtained a default judgment against Golf in the sum of $3,130.60. On November 28, 2006, the trial court issued a rule to show cause why the Property should not be sold pursuant to Section 31.1 of what is commonly known as the Municipal Claims and Tax Lien Act (MCTLA).[2]

On January 16, 2007, the trial court entered an order permitting the Property to be exposed to public sale. Thereafter,

on March 20, 2007, the County filed a praecipe for writ of execution in the amount of $4,901.94, plus additional costs, interest and attorney fees, and the Property was scheduled to be exposed to public sale by way of a sheriff's sale on June 4, 2007. Rodgers testified that the Property was never posted with notice by the Sheriff and that he did not become aware of the impending sheriff's sale until he received a letter from the County's agent, Jordan Tax Service (Service).

Upon learning of the sheriff's sale scheduled for June 4, 2007, Rodgers, on behalf of Golf, called Service and had several conversations with an attorney for Service. Rodgers testified that such attorney was known to him as "Jake". Rodgers informed Service that Golf had a verbal agreement with the Five Points Investment Company which was part of the Park West Corporation, to purchase both the Property and adjoining farmland in Westmoreland County for a minimum of $2,800,000.00 and that the tentative closing date was June 15, 2007. Rodgers also asked Service to postpone the sale, so that Golf would have an opportunity to close the proposed sale and a payment agreement could be worked out. Allegedly, Jake, on behalf of Service, assured Rodgers that the sale would be postponed until sometime in August and that Service would provide at least ten days notice of the rescheduled sale date. As a result of the conversations with Service, Rodgers did not attend the June 4, 2007 sheriff's sale. At the June 4, 2007 sheriff's sale, a public announcement was made postponing the June 4, 2007 sale until the next sheriff's sale on July 2, 2007.

1. We note, as mentioned above, that the property is located in both Westmoreland County and Allegheny County, with a mailing address of New Kensington, Westmoreland County.

2. Act of May 16, 1923, P.L. 207, *as amended*, added by the Act of May 22, 1945, P.L. 844,

53 P.S. § 7282. Section 31.1 of the MCTLA provides for the court to issue a rule to "show cause why a decree should not be made that said property be sold, freed and cleared of their respective claims ... and without any right of redemption after such sale." 53 P.S. § 7282.

On July 2, 2007, the Property was re-exposed to public sale and ultimately sold. Rodgers was not notified of the rescheduled sale date. The bidding opened at the upset sale price of $39,499.81 and was sold at the final bid of $140,000.00 to David Bundy (Bundy). The sale was conducted by Sergeant Richard Fersch (Sgt.Fersch), who indicated that Bundy was an active bidder at sheriff's sales and is one of two individuals permitted to pay with a personal check. Sgt. Fersch further indicated that Bundy sat next to Dustin Monokian, an attorney for Service (Monokian), and that Monokian had represented Bundy in the past. Thereafter, Bundy requested the deed to the Property be recorded in the name of Jeff and Amy Stewart, his daughter and son-in-law. Bundy posted ten percent of his bid, $14,000.00.

Prior to paying the balance due, Jeff Stewart (Stewart), Bundy and James Swindell (Swindell), Bundy's brother-in-law, were together at a family function. Swindell testified that Stewart informed him that he was going to default on his bid. The group then discussed various sheriff's sale procedures. Swindell stated that Stewart told him the amount of unpaid taxes on the Property was $39,499.81. Thereafter, Swindell obtained a cashier's check in the amount of $39,000.00 and went to the sheriff's office with Bundy to purchase the Property on July 9, 2007.

Sgt. Fersch testified that on July 9, 2007, the day the balance was due on the Property, Bundy appeared by himself at the Sheriff's office and indicated that he was going to forfeit his bid and $14,000.00 deposit. Sgt. Fersch indicated that forfei-ture was a rare occurrence. A few minutes later, Monokian appeared without being informed by the sheriff's office that Bundy was forfeiting. At some point, Stewart and Swindell arrived at the sheriff's office. All parties waited until 10:00 a.m., as the rule provides, at which time, Sgt. Fersch informed Monokian that the Property was going to be forfeited and asked Monokian whether he would like to re-expose the Property to public sale or get a court order to postpone the sale to a later date at which more people could attend. Monokian instructed Sgt. Fersch to re-expose the Property to sale immediately, a decision which Sgt. Fersch also thought to be highly unusual due to the existence of such active bidding at the July 2, 2007 sale. Sgt. Fersch also described the decision as unusual, as the attorney of record normally obtains an order of court to postpone the sale to another date so that there would be more people in attendance to bid. Sgt. Fersch further believed that this was unusual due to the fact that bidding in this case had risen to $140,000.00 and was now being immediately re-exposed for costs and taxes when only one bidder was present.

Nevertheless, with only Bundy, Stewart, Monokian and Swindell present, Sgt. Fersch reopened the sale of the Property at the upset price of $39,499.81 in the Sheriff's office. Swindell then bid the upset sale price plus an additional $100.00. Due to the fact that there were no other bidders present, Swindell obtained the Property at that first bid. Swindell, the only bidder at the resale on July 9, 2007, is Bundy's brother-in-law and had never invested in real estate before this transaction.[3]

---

**3.** In recapping the value of the Property, we note that it had an assessed value of $288,000.00. Although at the hearing Golf produced a written offer from Park West to purchase the Property for $3,000,000.00, the trial court did not consider it because it was an offer for the entire 128 acres, not just the 68 acres at issue. At the first sheriff's sale, the final bid was $140,000.00. After forfeiture of the bid, the Property was purchased for $39,599.00.

Rogers did not find out about the July sales until he telephoned Service in mid-July to find out the exact amount of the taxes Golf owed. At that time, he was informed that the Property had been sold at a sheriff's sale, that the buyer, Bundy, had forfeited the Property and that it had been resold to Swindell.

Rogers confronted Swindell regarding the July 9, 2007 sale and was informed by Swindell that Rogers would be wasting his time, as the deed had already been delivered to Swindell. However, this was untrue, as Sgt. Fersch had filed a report with the Sheriff, as he believed the transaction showed signs of impropriety. Sgt. Fersch testified that the series of events that ultimately led to the sale of the Property at the upset price "didn't look right [and] it didn't feel right." R.R. at 107a. Consequently, the deed to the Property was not in Swindell's possession, nor has it been delivered since that time.

Golf subsequently petitioned the trial court to set aside the sheriff's sale of Property. The trial court denied such petition stating that proper cause was not shown. The trial court determined that Rogers received proper notice of the sale, that Rogers failed to prove any impropriety by clear and convincing evidence, and that he failed to prove that the purchase price was grossly inadequate. Golf now appeals the trial court's denial of its petition to set aside the sheriff's sale of Property to our court.

■ Golf contends that the trial court abused its discretion in denying Golf's petition to set aside the sheriff's sale, thereby effectuating a sale of the Property in which blatant irregularities were present and in which a gross inadequacy of price was present. Golf further contends that the trial court committed an error of law when it determined that setting aside the sheriff's sale was effectively allowing a redemption, which was not permitted under the circumstances.

■ A petition to set aside a sheriff sale is governed by the Pennsylvania Rules of Civil Procedure which provide that "[u]pon petition of any party in interest before delivery of the ... sheriff's deed to real property, the court, may upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances." Pa. R.C.P. No. 3132. In *Doherty v. Adal Corp.,* 437 Pa. 109, 261 A.2d 311 (1970), our Supreme Court held that a petition to set aside a sheriff sale is an equitable proceeding, governed by equitable principles. Appellate review of equitable matters is limited to a determination of whether the trial court committed an error of law or abused its discretion. *Sack v. Feinman,* 489 Pa. 152, 413 A.2d 1059 (1980).

■ An abuse of discretion is defined as a misapplication of the law, a manifestly unreasonable exercise in judgment, or a final result that evidences partiality, prejudice, bias, or ill-will. *Arrington v. Pennsylvania Liquor Control Board,* 667 A.2d 439 (Pa.Cmwlth.1995). When there is no rational support in the record for a finding of fact, there has been a manifestly unreasonable error in judgment and, therefore, an abuse of discretion. *Rosing, Inc. v. Pennsylvania Liquor Control Board,* 690 A.2d 758, 760 (Pa.Cmwlth.1997). "As a general rule, the burden of proving circumstances warranting the exercise of the court's equitable powers is on the applicant, and the application to set aside a sheriff's sale may be refused because of the insufficiency of proof to support the material allegations of the application, which are generally required to be established by clear evidence." *Bornman v. Gordon,* 363 Pa.Super. 607, 527 A.2d 109, 111 (1987).

Golf contends that the sheriff's sale should be set aside, as blatant irregularities were present and a grossly inadequate price was received.

Initially, Golf contends that it did not receive notice of the postponed sale date. The trial court is correct that no notice need be provided to the property owner if the "sale is stayed, continued, postponed or adjourned to a date certain within one hundred thirty days of the scheduled sale, notice of which sale was given as provided by Rule 3120.2, and public announcement thereof, including the new date, is made to the bidders assembled at the time and place fixed for the sale, no new notice as provided by Rule 3129.2 shall be required...." Pa. R.C.P. No. 3129.3. Because it was publicly announced at the June 4, 2007 sheriff's sale that the sheriff's sale would be postponed until July 2, 2007, and Golf had notice of the June 4, 2007 sheriff's sale, Service was not required to inform Golf of the postponed sale date.

■ Next, we will address Golf's assertion of irregularities with regard to the sheriff's sale. We note that irregularities may appear in the conduct of either the sheriff's office representative conducting the sale or the parties to the transaction. *McKenna v. Sosso*, 745 A.2d 1 (Pa.Super.1999). The trial court found no irregularities alleged by Golf in its petition to set aside the sheriff's sale. However, upon review of Golf's petition to set aside the sheriff's sale, we find that irregularities were alleged. Specifically, Golf alleged that "the subsequent sale, held without notice, was designed specifically to relieve

initial purchasers of the burden of paying the balance of the $140,000.00 bid price and to exclude other bidders and the Defendant [Golf]." Petition to set aside sheriff's sale (Petition), Paragraph 9, at 2. Golf also alleged that the attorney for Service also represented the "first bidder". *Id.* The first bidder was Bundy, not Stewart, as the trial court infers. Further, there is no testimony of record which indicates that Monokian, the attorney for Service, did not also represent Bundy.[4] Monokian also represented Bundy in the past and appeared at the Sheriff's office without notice on the day the balance was due from Bundy and made the decision to re-expose the Property immediately with only one potential bidder, Bundy's brother-in-law, Swindell, present in addition to Bundy, who was forfeiting and his son-in-law, Stewart, the previously designated grantee of the Property.

A review of the record reveals that these contentions are supported by Sgt. Fersch's testimony. Sgt. Fersch described the forfeiture and subsequent sale as "very unusual" and thereafter submitted a report which detailed the irregularities of the sale. An "irregularity" is defined in Black's Law Dictionary 848 (8th ed.2004), as "[s]omething irregular; esp., an act or practice that varies from the normal conduct of an action." Our court has previously referred to an irregularity as the series of events which take place in reaching a final result; that an irregularity is not necessarily in the final result itself. *See Jefferson Woodlands, L.P. v. Jefferson Hills Borough*, 881 A.2d 44, 48 (Pa. Cmwlth.2005). Such irregularities were proven by Sgt. Fersch's testimony.[5] Ac-

---

**4.** As stated previously, when there is no rational support in the record for a finding of fact, there has been a manifestly unreasonable error in judgment and, therefore, an abuse of discretion. *Rosing*, 690 A.2d at 760.

**5.** Sgt. Fersch testified that the forfeiture of the initial $14,000.00 down payment was ir-

regular, that the attorney for Service showing up without being called was irregular, and that the attorney for Service asking him to proceed with a sheriff's sale of the forfeited Property immediately after the forfeiture, with only one bidder, without advertising and considering the amount received at the prior sheriff's sale was definitely irregular.

cordingly, we find that the trial court erred in determining that irregularities were neither alleged nor present in regard to this sheriff's sale.

Finally, we will address Golf's assertion that the price received was grossly inadequate.[6] In *Provident National Bank, N.A. v. Song*, 832 A.2d 1077, 1081 (Pa.Super.2003), the Superior Court found as follows:

> Courts have entertained petitions and granted relief where the validity of sale proceedings is challenged, or a deficiency pertaining to the notice of sale exists or where misconduct occurs in the bidding process.... Where a sale is challenged based upon the adequacy of the price our courts have frequently said that mere inadequacy of price **standing alone** is not a sufficient basis for setting aside a sheriff's sale.... However, where a "gross inadequacy" in the price is established courts have found proper grounds exist to set aside a sheriff's sale.... The courts have traditionally looked at each case on its own facts.... It is for this reason that the term 'grossly inadequate price' has never been fixed by any court at any given amount or any percentage amount of the sale.... Further **it is presumed that the price re-**

> **ceived at a duly advertised public sale is the highest and best obtainable ....** (emphasis added; citations omitted.)

In the present controversy, the presumed highest and best price was bid at the initial sheriff's sale, which was the duly advertised public sale, fetching $140,000.00. The subsequent sheriff's sale, which was conducted, according to Sgt. Fersch, under questionable circumstances, which included forfeiture by the original bidder, the attorney for Service who also represented Bundy in the past showing up without being called by the sheriff's department and directing that an immediate, unadvertised, re-exposure to public sale with only the forfeiter's family member present to bid on the Property, resulted in a price of $39,599.00, well below the presumed highest and best price. This shows a grossly inadequate price and supports the setting aside of the sheriff's sale.[7]

The trial court's finding and order are not consistent with the evidence.[8] When we look at this case on its own facts, the evidence reflects irregularities in the sheriff's sale as well as a grossly inadequate sale price. Even though we have limited authority on appeal and our deference in most cases is to the trial court's determi-

---

6. Swindell contends that the sheriff's sale was brought pursuant to Section 14 of the MCTLA, 53 P.S. § 7182 and that the adequacy of the sale price paid by Swindell is not a basis upon which to set aside a sale when the sale price has satisfied the upset price. *GLS Capital, Inc. v. Davis*, 899 A.2d 371 (Pa. Cmwlth.2006). However, Golf supports its contention of the impropriety of the sale with its showing of the inadequate sale price. Its contention is that the amount that was bid at the second sheriff's sale of the Property was grossly inadequate, as compared to the first sale.

7. The conduct of the purchasers as well as the attorney for Service in this matter is disappointing at the least and is not to be rewarded in a court of equity.

8. With regard to the issue of redemption, we note that the redemption issue is separate and distinct from that of the petition to set aside the sheriff's sale. Our court looks only to the propriety of the sheriff's sale, not whether the defendant in the *scire facias* proceeding had a right of redemption. We also note that the setting aside of a sheriff sale is not inequitable to the purchaser at the sale. Swindell had bid on the Property at the sheriff sale with knowledge of Golf's record ownership. Swindell's interest in the Property, if any, is subordinate and any money he paid will be returned. There is no inequity or prejudice here.

nation based upon its first-hand observation of the witnesses, we must apply equitable principles here since the setting aside of a sheriff's sale is an equitable proceeding. The trial court clearly abused its discretion in failing to find irregularities in the sheriff's sale.

Accordingly, as the trial court abused its discretion, we must reverse and remand for the entry of an order setting aside the sheriff sale of Golf's Property.

**ORDER**

AND NOW, this 4th day of June, 2009, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is reversed and the matter is remanded for the entry of an order setting aside the sheriff sale.

Jurisdiction relinquished.