# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Philadelphia | : | |
| | : | |
| v. | : | No. 267 C.D. 2018 |
| | : | Argued: November 14, 2019 |
| Darren Hart | : | |
| | : | |
| Appeal of: Omont Wiggins | : | |
| | : | |
| | : | |
| City of Philadelphia, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 351 C.D. 2018 |
| | : | Argued: November 14, 2019 |
| Darren Hart | : | |

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY JUDGE BROBSON          FILED:  January 3, 2020

Appellants City of Philadelphia (City) and Omont Wiggins (Wiggins) appeal from an order of the Court of Common Pleas of Philadelphia County (trial court), dated January 30, 2018, which granted the amended petition to set aside a tax sale of real property filed by Appellee Darren Hart (Hart). The City conducted the tax sale pursuant to what is commonly referred to as the Municipal Claims and Tax Liens Act, Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101-7505 (MCTLA). For the reasons set forth below, we reverse the trial court's order.

# I. BACKGROUND

We previously summarized the undisputed background facts of this case in our unreported decision *Hart v. Bulldawg LLC* (Pa. Cmwlth., No. 107 C.D. 2016, filed February 14, 2017) (*Hart*):[1]

> The underlying dispute involves delinquent real estate taxes beginning with the 2011 tax year for property located at 26 Apsley Street, Philadelphia, Pennsylvania (the Property). Hart purchased the Property in 2013 for $20,000.
>
> On July 21, 2014, the City petitioned the trial court for a rule to show cause why the Property should not be sold free and clear of all encumbrances at a sheriff's sale pursuant to the MCTLA for unpaid real estate taxes. On September 18, 2014, the trial court granted the City's petition and issued a rule to show cause why a decree should not be entered permitting the sale of the Property free and clear of all liens and encumbrances. On October 31, 2014, the City filed an affidavit of sheriff's service, stating that the Property had been posted with notice of the petition and rule to show cause. The City also filed an affidavit of service, stating that the petition and rule to show cause had been sent by certified and first class mail to Hart. After receiving no response, the trial court issued a decree on December 31, 2014, permitting the City to sell the Property at a sheriff's sale. On January 29, 2015, the City served Hart with notice of the sheriff's sale. On February 18, 2015, the Property was sold at the sheriff's sale. The only bidder, Bulldawg LLC, purchased the Property for the amount of $1,100.
>
> On March 10, 2015, Hart filed a petition to set aside the sheriff's sale, alleging he did not receive notice from the posting, first class mail, or certified mail. On March 20, 2015, the sheriff's deed was acknowledged. On March 27, 2015, the City filed an answer to Hart's petition

---

[1] Pursuant to Section 414(a) of the Commonwealth Court Internal Operating Procedures, "[a]n unreported opinion of this [C]ourt may be cited and relied upon when it is relevant under the doctrine of law of the case, res judicata or collateral estoppel." 210 Pa. Code § 69.414(a).

to set aside. The City attached to its answer a certified mail receipt[,] which indicated that delivery of the petition and rule to show cause was made to Hart's address and included Hart's signature. Then on April 1, 2015, the sheriff's deed reflecting Bulldawg LLC's ownership of the Property was recorded.

On April 13, 2015, Hart amended his petition to set aside the sheriff's sale. In his amended petition, Hart argued first that Bulldawg LLC installed a security gate while trespassing on the Property, preventing Hart from entering the Property. Hart also argued that the fair market value of the Property exceeds $78,000 and that the bid price of $1,100 at the sheriff's sale was grossly inadequate. Hart argued that, in light of the trespass and gross inadequacy of the bid price, failure to set aside the sheriff's sale would "constitute a gross miscarriage of equitable justice." In his amended petition to set aside, Hart did not contest notice.

On May 4, 2015, the City filed an answer to Hart's amended petition. The City argued that it would be prejudiced if the sale was set aside and that there was no indication that Hart would pay the delinquent taxes that he failed to pay in the past.

The trial court held a hearing on the amended petition to set aside on June 9, 2015. At the hearing, Hart testified that he was willing to pay the delinquent taxes or enter into a payment plan if the sale was set aside. Hart also reiterated the argument that the bid price was approximately 2% of the fair market value of the Property and, thus, was grossly inadequate. Hart, by his attorney, argued that "for sales less than [10%], that has typically been found to be grossly inadequate." Hart testified that the bulk of the money due was for an unpaid water bill. The City's attorney refuted Hart's contention that this case originated from a water bill and stated that there is a separate procedure for unpaid water bills—thus the matter before the trial court was exclusively a result of delinquent taxes. The City also argued that Hart was not entitled to relief from the sale under the MCTLA.

The trial court's order, dated June 15, 2015, denied Hart's [amended] petition to set aside the tax sale. In an

opinion dated October 7, 2015, the trial court reasoned that, despite the low bid price of $1,100 in comparison to the alleged fair market value of $78,000 [to $100,000], Hart did not offer evidence to support the alleged fair market value. Specifically, the trial court noted that while Hart attached supporting documents to his pleadings, Hart did not introduce any evidence at the hearing regarding the alleged gross inadequacy of the bid price compared to the fair market value. The trial court also noted that, pursuant to Rule 3132 of the Pennsylvania Rules of Civil Procedure, it was unable to set aside the sheriff's sale, because, by the time of the hearing on June 9, 2015, the sheriff's deed had been delivered. Thus, the trial court reasoned, Hart's petition to set aside was untimely.

*Hart*, slip. op. at 2-5 (footnotes and citations omitted).

Hart appealed the trial court's decision to this Court, arguing that the trial court abused its discretion and/or committed an error of law by: (1) failing to consider the exhibits to his amended petition to set aside the tax sale as evidence of the Property's fair market value; (2) failing to reach a conclusion as to the Property's fair market value; and (3) denying his amended petition to set aside the tax sale due to the gross inadequacy of the Property's sale price. *Hart*, slip op. at 5. By opinion and order dated February 14, 2017, this Court concluded that the trial court did not commit an error of law by determining that the Property's alleged fair market value of $78,000 to $100,000 was not supported by the evidence of record. *Hart*, slip op. at 7. In so doing, this Court reasoned that Hart's claim that the Property had a fair market value of $78,000 or greater was unsubstantiated because Hart failed to introduce the two documents attached to his amended petition to set aside the tax sale into evidence at the time of the evidentiary hearing. *Hart*, slip op. at 7. This Court also concluded, however, that Hart did present the trial court with evidence that the Property had an alleged fair market value of $20,000—*i.e.*, the amount Hart paid to purchase the Property in 2013—and, therefore, the trial court erred by failing

4

to evaluate such evidence or determine whether the Property's sale price was grossly inadequate. *Hart,* slip op. at 8. As a result, this Court vacated the trial court's order and remanded the matter to the trial court for the issuance of a new determination regarding whether the tax sale should be set aside for gross inadequacy. *Hart*, slip op. at 8.

The trial court conducted an evidentiary hearing on November 17, 2017, and December 8, 2017. At that time, the parties stipulated that the amount of the municipal liens on the Property at the time of the tax sale was in excess of $35,000. (Reproduced Record (R.R.) at 230a.) The City also stipulated that there would be no personal liability against Hart for any of the unpaid municipal liens for the Property. (*Id.*) Hart testified that he purchased the Property, which was a 3-floor "shell" that needed to be gutted and completely rehabbed, in September/October 2013 for $10,000.[2] (*Id.* at 232.) Hart explained that, prior to the purchase, he cleaned and gutted the Property to the studs and replaced the roof, but he thereafter sealed the Property and stopped working around July 2013 because his mother passed away. (*Id.* at 232a-34a.) Hart also presented the testimony of Edward Drach (Drach), a certified residential appraiser, who testified that, on February 18, 2015, the Property's fair market value was $30,000. (*Id.* at 239a.) Drach stated that, in his appraisal report, he compared the Property to another property located a couple of blocks away that sold for $46,000 and made adjustments to the Property's value based upon the condition of both properties. (*Id.* at 183a, 235a, 237a-39a.) Drach explained that, even though the comparable property was livable and the Property was a completely gutted shell with no stairs, windows,

---

[2] We note for the record that, during the prior proceedings in this case, Hart represented that he purchased the Property for $20,000.

kitchen, bathrooms, floors, interior walls, electric, or plumbing, the difference in value between the comparable property and the Property was only about $15,000. (*Id.* at 240a.) Drach explained further that the adjustments that he made to account for the difference in value are adjustments that he has been using for 28 years that relate to "similar type properties in similar type areas . . . that ha[ve] nothing to do with the cost of what is there or the cost of what you can put in there." (*Id.*)

The City presented the testimony of John Adams (Adams), a certified residential appraiser. (*Id.* at 240a-41a.) Adams testified that, while the comparable properties used by Drach in his appraisal report were appropriate, he would have made different adjustments because there were no comparable properties in the neighborhood that were "as bad as" the Property. (*Id.* at 241a.) Adams testified further that the negative adjustments[3] made by Drach—*i.e.*, $10,000 for the condition, $3,500 for the basement, and $5,000 for the kitchen and bathroom—were inadequate and insufficient given the superior condition of the comparable properties. (*Id.*) Adams indicated that he would have made a $40,000 negative adjustment for the condition of the Property and an overall negative adjustment of $60,000. (*Id.* at 242a.) When questioned about the amount of his adjustments in light of the value of a comparable property, Adams explained that a $60,000 negative adjustment could be appropriate when compared to a $46,000 property depending on the circumstances. (*Id.* at 245a-46a.)

Wiggins,[4] the current owner of the Property, who purchased the Property from Bulldawg LLC for $1,000 in 2015, testified that he performed certain

---

[3] Drach also made a positive adjustment in the amount of $2,500 for the Property's view. (R.R. at 241a.)

[4] The trial court granted Wiggins leave to intervene in this matter by order dated December 8, 2017.

6

work on the Property in 2015 and 2016 and invested approximately $100,000 into the Property. (*Id.* at 250a-53a.) With the exception of a few receipts for lumber, concrete, and other building materials, however, Wiggins did not provide any documentation to support his estimates of the amount of money that he expended for labor and materials in connection with the Property. (*Id.* at 253a-55a.)

By order dated January 30, 2018, the trial court granted Hart's amended petition to set aside the tax sale. The City and Wiggins appealed the trial court's decision to this Court, and the trial court directed the City and Wiggins to file a statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925. In its Rule 1925(a) opinion, the trial court concluded, *inter alia*, that the Property's sale price "was grossly inadequate in proportion to the [P]roperty's value," and that Wiggins was not entitled to reimbursement for the expenditures that he made to improve the Property after he purchased the Property from Bulldawg LLC. (Trial Ct. Op. at 10-13.)

## II. ARGUMENTS ON APPEAL

On appeal,[5] the City argues: (1) Hart lacks standing to challenge the Property's sale price as grossly inadequate; and (2) the trial court committed an error of law and/or abused its discretion by concluding that the Property's sale price was grossly inadequate. In addition to adopting those arguments set forth on appeal by the City, Wiggins also argues that the trial court committed an error of law and/or abused its discretion by: (1) failing to take into consideration his interest and equity in the Property as an innocent purchaser, who acquired title to the Property free and

---

[5] "This Court's review in tax sale cases is limited to a determination of whether the trial court abused its discretion, erred as a matter of law or rendered a decision with [a] lack of supporting evidence." *Wiles v. Washington Cty. Tax Claim Bureau*, 972 A.2d 24, 27 n.2 (Pa. Cmwlth. 2009).

7

clear of all claims and thereafter invested approximately $100,000 into the Property for improvements; and (2) failing to require Hart to compensate him for the $100,000 that he reasonably invested into the Property for improvements.

### III. DISCUSSION

### A. Standing

The City argues that Hart lacks standing to challenge the Property's sale price as grossly inadequate because, even if the Property had been sold for $30,000—*i.e.*, the Property's fair market value as alleged by Hart—Hart would not have received any proceeds from the Property's sale, and, therefore, Hart was not harmed by any alleged gross inadequacy in the Property's sale price. More specifically, the City contends that, given the $35,000 in municipal liens on the Property, there is absolutely no difference to Hart between a $1,100 sale price and a $30,000 sale price, because with either sale price all of the proceeds from the sale would go to the City to satisfy the municipal liens and the City stipulated that it would not proceed against Hart personally for any remaining unpaid municipal liens. In response, Hart argues that the amount of the municipal liens on the Property is irrelevant to and has no effect on a determination of the Property's fair market value. Hart further contends that he has been harmed by the Property's grossly inadequate sale price because he testified that he is willing to pay or enter into a payment plan for the delinquent taxes and unpaid water and utility bills for the Property.

A party seeking to set aside a sheriff's sale, like any other "party seeking judicial resolution of a controversy in this Commonwealth must, as a prerequisite, establish that he has standing to maintain the action." *Merrill Lynch Mortg. Capital v. Steele*, 859 A.2d 788, 789-90 (Pa. Super. 2004), *appeal denied*,

8

872 A.2d 1199 (Pa. 2005) (quoting *In re Hickson*, 821 A.2d 1238, 1243 (Pa. 2003)).[6] "A party has standing if he is aggrieved, *i.e.*, he can show a substantial, direct, and immediate interest in the outcome of the litigation." *Id.* at 790. In addition to establishing that he is aggrieved, a party filing a petition to set aside a sheriff's sale must also demonstrate that he is a "party in interest" as required by Pennsylvania Rule of Civil Procedure No. 3132.[7] *Id.*

Here, it appears that the City is confusing the concept of standing to file the amended petition to set aside the tax sale with the issue of whether Hart can be successful on the merits—*i.e.*, proving that the Property's sale price was grossly inadequate. Just because Hart may not benefit financially from setting aside the tax sale does not mean that Hart does not have standing to challenge the tax sale. Hart was the record owner of the Property at the time of the tax sale and at the time that he filed his initial petition to set aside the tax sale. As the record owner of the Property, Hart was a party in interest, who had a substantial, direct, and immediate interest in avoiding the transfer of the Property to Bulldawg LLC. As a result, we cannot conclude that Hart lacked standing to file his amended petition to set aside the tax sale.

---

[6] Although not binding on this Court, Pennsylvania Superior Court decisions may be cited for their persuasive value when they address analogous issues. *Lerch v. Unemployment Comp. Bd. of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

[7] Pennsylvania Rule of Civil Procedure No. 3132 provides:

Upon petition of any party in interest before delivery of the personal property or of the sheriff's deed to real property, the court may, upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances.

## B. Sale Price Not Grossly Inadequate

The City argues that the trial court committed an error of law and/or abused its discretion by concluding that the Property's sale price was grossly inadequate, because the trial court: (1) improperly relied on the Property's $78,000 assessed value to determine the Property's fair market value and then misapplied its own methodology in determining whether the sale price was grossly inadequate; (2) failed to take into consideration that Bulldawg LLC—the successful bidder at the tax sale—sold the Property to Wiggins—a subsequent purchaser—for only $1,000; and (3) improperly relied on the inaccurate testimony of Hart's appraiser. In response, Hart argues that the trial court did not commit an error of law or abuse its discretion by granting his amended petition to set aside the tax sale because the Property's $1,100 sale price was grossly inadequate when compared to the Property's $30,000 fair market value.

Where a tax sale is challenged based upon the adequacy of the price, our courts have frequently held that mere inadequacy of price, standing alone, is not a sufficient basis for setting aside a sheriff's sale. *Allegheny Cty. v. Golf Resort, Inc.*, 974 A.2d 1242, 1247 (Pa. Cmwlth. 2009) (quoting *Provident Nat'l Bank, N.A. v. Song*, 832 A.2d 1077, 1081 (Pa. Super. 2003)). Where a gross inadequacy exists, however, courts have found proper grounds to set aside a sheriff's sale, and each case is determined on its own facts. *Id.* "It is for this reason that the term 'grossly inadequate price' has never been fixed by any court at any given amount or any percentage amount of the sale." *Scott v. Adal Corp.*, 509 A.2d 1279, 1283 (Pa. Super. 1986), *appeal denied*, 523 A.2d 1132 (Pa. 1987). In addition, a presumption exists that the price received at a public sale is the highest and best

10

available. *Blue Ball Nat'l Bank v. Balmer*, 810 A.2d 164, 167 (Pa. Super. 2002), *appeal denied*, 820 A.2d 702 (Pa. 2003).

Here, Hart's appraiser testified that the Property's fair market value was $30,000.[8] Even if we were to assume that the trial court properly relied upon the testimony of Hart's appraiser to establish the Property's fair market value, the evidence of record does not establish that the Property's sale price was grossly inadequate. Hart is essentially asking this Court to compare the Property's sale price to the Property's fair market value and, based solely on the fact that the Property's sale price was a small percentage of the Property's fair market value, determine that the Property's sale price was grossly inadequate. This we will not do, as we must decide each case, including this one, on its own facts. *Allegheny Cty.*, 974 A.2d at 1247. We must, therefore, consider all of the facts of this case and not just the difference between the Property's sale price and the Property's fair market value. Here, it is apparent to this Court that a consideration of whether the Property's sale price was grossly inadequate serves the purpose of either protecting the Property's

___

[8] In its opinion, the trial court appears to have performed its analysis of whether the Property's sale price was grossly inadequate based upon its indication that Hart's appraiser "assessed the [P]roperty's fair market value at $78,000." (Trial Ct. Op. at 10.) In support of its statement as to the fair market value of the Property, however, the trial court cited not to the testimony of Hart's appraiser but rather to a statement made on the record by Hart's counsel at the time of the June 2, 2017 proceeding. (*See* Supplemental Original Record, Notes and Testimony, June 2, 2017, at 4-5 ("[T]he Commonwealth Court remanded the matter in front of us today for an evidentiary hearing to demonstrate that [Hart's] evaluation of the [P]roperty, which was at least $78,000, can be shown with evidence.").) Based upon our review of the record and the parties' briefs, it appears to this Court that the trial court mistakenly referenced Hart's original, unsupported position as the Property's fair market value rather than the $30,000 fair market value established by the testimony of Hart's appraiser at the time of the evidentiary hearing. Regardless of any misapprehension by the trial court, Hart appears to concede in his brief to this Court that he presented evidence establishing that the fair market value of the Property was $30,000, not $78,000. Thus, we will restrict our review to whether the Property's sale price was grossly inadequate based upon a $30,000 fair market value.

11

money value in excess of the municipal liens against it—*i.e.*, Hart's equity—or preventing Hart from being personally liable for the difference between the Property's sale price and the amount of the debt owed to the City. In that regard, we must consider the municipal liens and their effect on Hart's financial interest in the Property when determining whether the Property's sale price was grossly inadequate. The parties stipulated that the amount of the municipal liens at the time of the tax sale was in excess of $35,000. (R.R. at 230a.) The City also stipulated that Hart would not be personally liable for any unpaid municipal claims following the tax sale. (*Id.*) As a result, the Property's $1,100 sale price was not grossly inadequate even though it was a small percentage of the Property's $30,000 fair market value, because, given the $35,000 in municipal liens, Hart had no equity in the Property to protect and was not personally responsible for any of the unpaid municipal liens after the tax sale. In other words, even if the sheriff sold the Property for its fair market value of $30,000, Hart would have seen no benefit because the municipal liens exceeded the fair market value of the Property. For these reasons, we must conclude that the trial court committed an error of law and abused its discretion by concluding that the Property's sale price was grossly inadequate.

## IV. CONCLUSION

Accordingly, we reverse the trial court's order.[9]

_____
P. KEVIN BROBSON, Judge

_____

[9] Given our disposition above, we need not consider the additional arguments raised by Wiggins on appeal.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Philadelphia | : | |
| | : | |
| v. | : | No. 267 C.D. 2018 |
| | : | |
| Darren Hart | : | |
| | : | |
| Appeal of: Omont Wiggins | : | |
| | : | |
| | : | |
| City of Philadelphia, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 351 C.D. 2018 |
| | : | |
| Darren Hart | : | |

## **O R D E R**

AND NOW, this 3rd day of January, 2020, the order of the Court of Common Pleas of Philadelphia County is hereby REVERSED.

P. KEVIN BROBSON, Judge